## STATE v. HOWD.

No. 3402.    Decided March 6, 1920.    (188 Pac. 628.)

1. FALSE PRETENSES—EVIDENCE INSUFFICIENT TO ESTABLISH CRIME. In a prosecution for having obtained certain cattle by fraudulent and false pretenses, checks given therefor having been dishonored, evidence *held* insufficient to establish a violation of Comp. Laws 1917, section 8344, not showing any intent to cheat or defraud, nor any actual fraud, nor a fraudulent representation or false pretense to perpetrate the fraud, nor that the alleged fraudulent representation or pretense induced the owner to part with the cattle. (Page 533.)

2. FALSE PRETENSES—PROMISE TO PAY WITHOUT INTENTION OF PERFORMING NOT A "FALSE PRETENSE"—"FRAUDULENT REPRESENTATION." The representation by the buyer of cattle that he would

pay therefor on their arrival, though made without intention to pay, was not a "fraudulent representation" or "false pretense" in the legal acceptance of the terms. (Page 533.)

3. FALSE PRETENSES—OCCURRENCES AFTER OWNER PARTED WITH POSSESSION DO NOT SUSTAIN CHARGE. What may have taken place between defendant and the owner of cattle after such owner had parted with them, by reason of which happenings the owner sustained pecuniary loss, could not support charge against defendant of having obtained the cattle by false pretenses. (Page 534.)

4. FALSE PRETENSES—CONVICTION UNSUSTAINED BY UNCORROBORATED VERBAL TESTIMONY OF COMPLAINANT. Under Comp. Laws 1917, section 8991, in a prosecution for having obtained cattle of another by false pretenses, the uncorroborated verbal testimony of the complaining witness was insufficient to sustain conviction. (Page 534.)

Appeal from District Court of Grand County, Seventh District; *Geo. Christensen*, Judge.

James C. Howd was convicted of obtaining property by false pretenses, and he appeals.

JUDGMENT REVERSED, and defendant discharged.

*W. F. Knox*, of Beaver City, for appellant.

*Dan B. Shields*, Atty. Gen., *James A. Wolfe, O. C. Dalby*, and *H. Van Dam, Jr.*, Asst. Attys. Gen., for the State.

CORFMAN, C. J.

The defendant was tried and convicted before the district court for Grand county of having obtained certain personal property by fraudulent and false pretenses. He appeals.

The defendant sets forth and complains on appeal of many alleged errors as grounds for reversal, among them that defendant did not have a preliminary examination, nor was it waived, before the committing magistrate as to the charge made against him in the information upon which he was tried and convicted in the district court.

For the purposes of this opinion we do not, however, deem it necessary to discuss or pass upon the regularity or legality of the proceedings leading up to the filing of the information, but will assume that such proceedings were regular and in accordance with law. The more important questions raised by the defendant are as to whether or not the judgment upon conviction can be sustained under the information filed, in view of the evidence adduced on the part of the state to prove the offense of which the defendant stands convicted.

The information as originally filed and afterwards amended contained two counts: One charging the defendant with grand larceny; the second charging him with "knowingly and designedly obtaining chattels by false representations and pretenses, committed as follows:

"That the said James C. Howd, on the 5th day of December, at Grand county, state of Utah, did then and there with intent to cheat and defraud Thomas B. Foy of his personal property, to wit, thirty head of cattle, knowingly, designedly, falsely, feloniously, and fraudulently represent and pretend to the said Thomas B. Foy, that he, the said James C. Howd, was then and there the duly authorized agent of Consley and Adams (amended to read Adams and Consley), of Grand Junction, Colo., the said Adams and Consley then being a reputable firm of live stock buyers, with headquarters in Grand Junction, Colo., and falsely represented and pretended that he the said James C. Howd was authorized to contract for the sale of said cattle for and on behalf of said Adams and Consley, and then and there falsely represented and pretended that the said Adams and Consley would pay the purchase price of said cattle upon delivery of said cattle and weight of the same at Grand Junction, Colo. By means of said false and fraudulent representations and pretenses, and the said Thomas B. Foy relying upon and believing said statements and said representations to be true, he, the said James C. Howd, did then and there knowingly and designedly obtain from the said Thomas B. Foy the possession of said thirty head of cattle aforesaid, with the intent then and there to cheat and defraud the said Thomas B. Foy of the same, contrary to the form of the statute," etc

At the trial, upon application being made by the defendant to the court for an order requiring an election, the state at the conclusion of the testimony elected to and did rely upon the second count alone in the information.

There is no material conflict in the testimony. It shows

that some time prior to December 5, 1918, the defendant had engaged under contract to furnish Adams and Consley of Grand Junction, Colo., certain cattle. The defendant was unable to furnish the specific cattle called for under the said contract. About this time the defendant met the complaining witness, Thomas B. Foy, who was engaged in raising live stock at Thompsons, Utah. Foy did not have the kind of cattle called for in the contract defendant had entered into with Adams and Consley. However, the defendant at the time communicated with Adams and Consley, and it was agreed that Adams and Consley would take the kind of cattle that could be provided by the complaining witness Foy. Negotiations were then entered into between the defendant and Foy for the purchase of cows, the kind of animals that could be provided by Foy and other owners of cattle in the vicinity of Thompsons. A shipment of about ninety head of cattle was then made up at Thompsons, including thirty head of cows owned by Foy, and consigned to Adams and Consley at Grand Junction, Colo. The cattle were shipped in the name of defendant as consignor. The defendant, before shipment, paid to the witness Foy $200 to apply on the purchase price, the balance to be paid at Grand Junction upon the arrival of the cattle there and the weighing out and delivering to the consignee, Adams and Consley. The defendant and Foy together loaded the cattle on board cars at Thompsons, and both accompanied the shipment to Grand Junction, where it arrived on a Saturday night, but was not unloaded into the yards of Adams and Consley until the Sunday morning following. Up to the time of the delivery of the cattle to Adams and Consley there is no evidence tending to show any fraud or deception on the part of the defendant practiced upon Foy. It is true Foy testified that he "understood" the cattle were being purchased by Adams and Consley. However, Foy's testimony further shows, and there is no other testimony in the record bearing on the question, that the only representation made to him by the defendant was that he was buying cattle for the sugar factory (Adams and Consley). Regard-

ing this phase of the transaction at Thompsons, Utah, the testimony of Foy was as follows:

"Q. In what capacity was he acting for Adams and Consley?

"The Court: He may state what he [defendant] said. A. Well he had to furnish so many cattle a week for the sugar factory. Q. Did he say in what capacity he was buying, as manager or overseer? A. No, sir. Q. Did you understand or did you state that Adams and Consley were the buyers at the sugar factory? A. Yes, sir. Q. Had you heard of them previous to this time? A. Yes, sir. Q. And you knew of them being in the cow business? A. Yes, sir."

The testimony further shows that after the delivery of the cattle at Grand Junction the witness Foy asked for and received at the hands of Adams and Consley an allowance of fifteen pounds per head for shrinkage while the animals were in transit from Thompsons to Grand Junction, but the witness testifies he made the bills of sale only for the purpose of meeting the request of Adams and Consley. After the cattle had been weighed and delivered to Adams and Consley at Grand Junction the purchase price of the several lots, according to former ownership, was, at the request of Foy, ascertained by Adams and Consley, and by them a check for the entire shipment was made direct to the defendant. Thereupon the defendant made his personal checks for the purchase price of the several lots, including a check for the thirty head of cows that had been owned by Foy. Foy then returned home with the checks given him by defendant, and later, when the checks were presented at the Grand Junction bank upon which they had been drawn, payment was refused on account of insufficient funds. The testimony shows that at the time these checks were made out and delivered by defendant to Foy the defendant explained to him that he would not have sufficient funds in the bank until he deposited the check that had been given him for the cattle by Adams and Consley. While it is true the record shows that Foy executed a bill of sale for the cattle to Adams and Consley at the request of the latter, the witness Foy, when questioned as to whom he expected to get his pay for the cattle from, testified that he thought at the time he was going to get it from the defendant,

and that he supposed that defendant and Adams and Consley had "settled up."

It is also shown by the testimony that subsequent to the transaction criminally complained of against defendant the complaining witness, Foy, instituted attachment proceedings in a civil action against the defendant, in which it was expressly stated, both by affidavit and allegation in the complaint, as grounds for a recovery, that the defendant was indebted to him "upon an express contract for certain cattle sold to defendant."

At the conclusion of the testimony for the state the defendant moved the court for a dismissal upon various grounds, among them "that the facts show that the defendant committed no offense whatever in getting the thirty head of cattle from the complaining witness, Mr. Foy," and again, before the submission of the case to the jury for a directed verdict that the defendant was not guilty of the offense attempted to be charged in the information, upon the ground of the insufficiency of the testimony. The trial court's denial of these motions is relied upon and assigned as error by defendant for a reversal of the judgment entered against him.

There is much testimony in the record tending to show the disreputable character of the defendant. He was, according to his own testimony, acting under an assumed name while dealing with Mr. Foy; that after he received payment for the shipment of cattle he indulged himself in drink, and while drinking lost the money he had received for the cattle at the gambling table, and then departed for Canada without providing funds at the bank to meet payment of the checks he had given to Mr. Foy. However, as we read the testimony in this case, it is insufficient in many particulars to establish the crime sought to be charged in the information and of which defendant was convicted in the district court—that of "obtaining from another, by false and fraudulent representations and pretenses, goods, chattels, and things with intent to cheat and defraud such other person," to wit, thirty head of cattle, the property of Thomas B. Foy.

Under our statute (Comp. Laws Utah 1917) section 8344, it is provided:

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, shall obtain from any other person any chose in action, money, goods, wares, chattels, effects, or other valuable thing, with intent to cheat or defraud any person of the same, if the value of the property so obtained does not exceed fifty dollars, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than fifty dollars, the person so offending shall be punishable as in cases of grand larceny."

It will be seen that under our statute, in order to constitute the offense of which the defendant stands convicted, certain elements or things must concur, viz.: (1) There must be an intent to cheat or defraud; (2) an actual fraud must be committed; (3) there must be a fraudulent representation or a false pretense for the purpose of perpetrating the fraud in obtaining the property of another; (4) the fraudulent representation or false pretense must be the cause which induced the owner to part with his property.

In our opinion, proof of any one of the foregoing essential elements is wholly lacking in the case at bar. The testimony is absolutely clear that no actual fraud was intended or perpetrated in this state. All that can be gathered from the record of the testimony is to the effect that defendant purchased Foy's cattle at Thompsons, Utah, that he there paid to Foy a part of the purchase price, and promised to pay the balance upon the arrival of the cattle at Grand Junction, Colo., a promise to be performed in the future. This was a very ordinary and perfectly legitimate transaction, and one that would not legally justify any inference of an intention to cheat or defraud Mr. Foy out of his property. Let it be conceded, although it is not shown from the testimony. that the defendant did not intend to pay for the cattle upon their arrival at Grand Junction, yet his representation that he would pay was purely promissory in character, and therefore may not be held as a fraudulent representation or false pretense in the legal meaning or acceptance of the terms. *Colly* v. *State,* 55 Ala. 85; *State* v. *Haines,* 23 S. C. 170-173; *State* v. *Mills,* 17 Me. 211-217; *Commonwealth* v. *Moore,* 99 Pa. 570; *Brown* v. *State,* 166 Ind. 85, 76

N. E. 881, 8 Ann. Cas. 1068; 11 R. C. L. page 831, section 9.

Neither as a matter of law nor as a question of fact do we think it can be held that the deefndant was legally or justly held for the crime of which he stands convicted in this state. The gravamen of the offense charged against him was the making of fraudulent representations and pretenses, and thereby obtaining Foy's cattle. The record discloses no fraudulent representations nor pretenses whatever in the transactions that took place between the parties whereby the defendant induced Foy to part with his prop-    **3, 4** erty. What may have subsequently transpired between the parties, by reason of which Foy sustained pecuniary loss, is not sufficient to support the charge made against the defendant in the information. Then again, regardless of the sufficiency of the testimony in the particulars we have heretofore mentioned and pointed out, we take the view that the testimony must be held insufficient in this case, for the reason that it conclusively appears from the record that the conviction was had by reason of uncorroborated verbal testimony of the complaining witness, Thomas B. Foy, alone. In this class of cases it is, by our statute (C. L. Utah 1917, section 8891), expressly provided:

"Upon a trial for having with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any money, personal property, or valuable thing, the defendant shall not be convicted if the false pretenses shall have been expressed in language, unaccompanied by a false token or writing, unless the pretense or some note or memorandum thereof be in writing, subscribed by or in the handwriting of the defendant, or unless the pretense be proved by the testimony of two witnesses, or that of one witness and corroborating circumstances; but this section shall not apply to a prosecution for falsely representing or personating another, and in such assumed character, marrying, or receiving any money or property."

We are therefore of the opinion that the motion for the defendant's discharge at the conclusion of the state's testimony, and the motion for a directed verdict in his favor upon submission of the case to the jury, should have been granted by the district court.

It is therefore ordered that the judgment be reversed, and that the defendant be discharged.

FRICK, WEBER, GIDEON, and THURMAN, JJ., concur.