## STATE v. TROGSTAD.

No. 6152. Decided March 29, 1940. (100 P. 2d 564.)

Rehearing Denied, June 5, 1940.

*Charles D. Moore* and *Ray S. McCarty*, both of Salt Lake City, for appellant.

*Joseph Chez*, Atty. Gen., and *Zelph S. Calder*, Asst. Atty. Gen., for respondent.

MOFFAT, Chief Justice.

Edith Trogstad is charged by the information with violating Section 11 of Chapter 18, Title 103, R. S. U. 1933. The statute reads:

"Any person who, for himself or as the agent or representative of another or as an officer of a corporation, willfully, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depositary, or upon any firm or corporation, knowing at the time of such making, drawing, uttering or delivery that the maker or drawer has not sufficient funds in or credit with such bank or other depositary, person, firm or corporation for the payment of such check, draft or order in full upon its presentation, although no express representation is made with reference thereto, is, in the event the amount of such check, draft or order does not exceed $50, guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding six months or by a fine not exceeding $299, and in the event the amount of such check, draft or order exceeds $50 in amount, is guilty of a felony, punishable by imprisonment in a county jail for not more than one year or in the state prison for not more than three years.

"The making, drawing, uttering or delivering of such check, draft or order as aforesaid shall be prima facie evidence of intent to defraud.

"The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or depositary, or per-

son, firm or corporation, for the payment of such check, draft or order."

A check, dated June 14, 1938, drawn on the First Security Trust Company in the sum of $300, is alleged to have been given to Mrs. E. O. Frakes in violation of the statute. A plea of not guilty was entered. Trial to a jury was had. Before submission of the cause to the jury, a motion for a directed verdict in favor of the defendant was interposed. The grounds upon which the motion was based will be stated later. The motion was denied. The cause went to the jury. A verdict of guilty was returned. A motion for a new trial was interposed, overruled and after sentence, this appeal was made. Numerous errors are assigned. We shall discuss such of them as are material.

The statute provides that there must be proved (a) an intent to defraud, and (b) a knowledge that the maker or drawer did not have (1) sufficient funds or (2) credit with the bank for payment. The essence of the charge is that the injured party must have relied upon some false and deceitful pretense. The check must have been drawn, uttered or delivered willfully and with the intent to defraud and knowing there was neither sufficient funds nor credit with the firm or person upon whom it was drawn.

The specific intent to defraud must be found from the evidence. Such intent must be shown to exist in the mind of the maker or drawer. Intent may be found from the circumstances. Reliance by the receiver of the check, draft or order upon the representations made at the time of the transaction and damage resulting therefrom are elements of the fraud. If the receiver accepted the check, draft or order as evidence of a loan, an essential element of fraud would be wanting. In the instant case, there is evidence that the transaction was one between a borrower and a lender.

Mrs. Frakes knew that there were no funds available for payment of the check immediately, when she received the

$300 check, but that it was to be held for a few days until it was good. This is in accord with Mrs. Frakes' own testimony. She held it for some time and tried to collect upon it. In other words, Mrs. Frakes treated the check as a promise to pay in the future, rather than as a check. This rebuts any idea that the check was delivered as a check with intent to defraud.

On cross examination of Mrs. Frakes, it was attempted to establish other transactions relating to credits by presenting in evidence other checks on another bank drawn when there was not sufficient funds to pay the checks.

The defendant took the witness stand in her own behalf and testified that the check was given as a memorandum of indebtedness. Other checks were offered by the defendant for the purpose of showing that such check was given as evidence of a debt and for the purpose of establishing the claimed defense; that of a creditor-debtor relationship. The state offered in evidence, and they were received, checks signed by the defendant given to other individuals on other banks which had not been honored because of insufficient funds. It is contended the court erred in allowing the introduction in evidence of these other transactions.

Such evidence may be received if it is so related to the transaction in question as to be material to show intent in the offense charged or is so intimately related to it as to be a part of the transaction. Such was the situation in the case of *State* v. *Gillies*, 40 Utah 541, 123 P. 93, 43 L. R. A., N. S., 776. This court stated therein that the general rule was that when a complete account of a transaction involved cannot be given without also showing the other transaction, and when the two are inseparably connected then the proof of one involves the other. There was no connection between the check issued to Mrs. Frakes and the other checks to other parties on other banks. On the prosecution for a particular crime, evidence which tends to show that the accused committed another crime, independent of that for which he is on trial, even of the same

sort, is inadmissible. There are exceptions to the general rule, carnal knowledge cases being one. *In re Sadleir*, 97 Utah 291, 85 P. 2d 810, on rehearing 97 Utah 313, 94 P. 2d 161, and cases cited.

We shall consider one further question. Did the State submit sufficient evidence to sustain a conviction? It is contended that the state failed to prove that the defendant had no credit to meet the check upon its presentation to the bank or upon the date it was issued. The check was drawn June 14, 1938, and was not presented for payment until September 25, 1938. The record discloses no direct proof that the defendant had no credit with the bank upon which the check was drawn. A representative of the bank identified the check and testified the account had been closed, not by the defendant but by the act of the bank during May, 1938, previous to the drawing of the check upon which the charge is based.

No evidence was presented to the court as to credit. The evidence is that the bank closed the account on its own motion, following the usual procedure in such case by mailing a cashier's check with a letter to the accused. There is no evidence Mrs. Trogstad knew that it had been closed or that she cashed the cashier's check. The testimony as to no account was limited to a checking account as of the date the check was written. There was no evidence that there was no account in September when the check was presented.

When it is proven that there is no account an inference may arise that there is no credit but a criminal conviction may not rest upon such inference alone. May the state rest when it has established there is no account? It must be shown, further, that there is no credit. There may be "no account," or "insufficient funds" and yet there may be credit. This essential element was not proved.

Other questions need not be discussed as we are of the opinion the motion for a directed verdict should have been granted. The judgment of conviction is set aside and the

court is ordered to enter judgment as upon a directed verdict of not guilty.

LARSON and PRATT, JJ., concur.

WOLFE, Justice.

I concur in the result. I base my concurrence on the ground that the intent to defraud was not in this case proved. I have doubt whether in any case a person could be convicted under Sec. 103-18-11, R. S. U. 1933, where the circumstances were such as to negative any representation that there were funds in the bank at the time the check was given. I think it unnecessary to decide the case on any other ground. There are statements in the opinion in regard to which I cannot concur. I also agree with Mr. Justice McDONOUGH that the order should be that a new trial be granted rather than that the suit be dismissed.

McDONOUGH, Justice.

I concur in the reversal of the judgment on the first ground stated in the opinion of the court, but I am of the opinion that the judgment of this court should be that a new trial be granted rather than that the trial court be ordered "to enter judgment as upon a directed verdict of not guilty."