BALLAINE et al. v. DISTRICT COURT OF FIRST JUDICIAL DISTRICT FOR BOX ELDER COUNTY et al.

No. 6601.   Decided November 17, 1944.   (152 P. 2d 265.)

Rehearing denied February 2, 1945.

See 35 C. J. S. False Pretenses, Sec. 1; [1] 22 Am. Jur. 448.

O. H. *Matthews* and P. G. *Ellis,* both of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., and A. U. *Miner,* Asst. Atty. Gen., for defendants.

TURNER, Justice.

This matter comes before the Court on plaintiff's petition for a writ of certiorari and also by appeal. The plaintiffs and appellants were convicted in the District Court of Box Elder County, Utah, of the crime of obtaining money and property under false pretenses.

Except for the problems arising about procedure to get this case before this Court, we are confronted with just two contentions. The first is that the information upon which appellants here, defendants below, stood trial, does not state a public offense, and the second, that the facts proved were insufficient to constitute the crime of which said defendants were convicted.

The information filed by the District Attorney of the First Judicial District is exceptionally verbose and because of repititions and the inclusion of evidentiary matters is extremely difficult to read with understanding. To copy the information in haec verba would be useless, but to set forth the essential statements of the pleading should present our first problem with clarity.

Instead of calling the defendants by name and continuously repeating these, we shall substitute for their names "defendants" and we shall omit the use of the numerous adjectives used by the pleader alleging false and fraudulent intentions of the accused, and we shall omit the many allegations of evidentiary matters which are not essential to the charge. With these substitutions and deletions, the pleading is as follows: The District Attorney, by this information, accuses the defendants of the crime of obtaining property and money by false pretenses, a felony, as follows, to wit: (1) That on the 20th day of November, 1940, at Brigham City, Box Elder County, Utah, said defendants, being engaged in the automobile business, made an automobile trade with Vergil Hansen. (2) The defendants then and there fraudulently represented to said Vergil Hansen that they would allow him a trade-in value of $475 on an old Plymouth car and would deliver to him a new 1941 Plymouth sedan, free and clear of any and all encumbrances, upon a cash payment of $541.38. (3) And thereafter, on or about December 24, 1940, Vergil Hansen, still relying on and believing said statements, accepted delivery of said 1941 Plymouth sedan and paid over to said defendants the sum of $541.38. (4) That immediately before the payment of the balance of the purchase price of said 1941 Plymouth sedan in the sum of $541.38, said defendants knowingly and fraudulently, with intent to cheat said Vergil Hansen of $541.38 and his old car, caused said 1941 Plymouth sedan to be registered with the State Tax Commission of Utah in the name of Platt Ballaine, and then and there obtained a loan upon said car in the sum of $888.66 from the Continental National Bank & Trust Company of Salt

Lake City by placing a lien thereon. (5) That said defendants did not, at any time, deliver said automobile and the title thereto to said Vergil Hansen, free and clear of any and all encumbrances and liens, as they represented they would do. (6) That as a result of said acts of said defendants, said Vergil Hansen was required to pay to said Continental National Bank & Trust Company of Salt Lake City the sum of $532.30 in order to clear said lien, so as to protect said automobile.

The usual language appears at the conclusion that all of such acts were done contrary to the provisions of the statutes and against the peace and dignity of the State of Utah. The information is dated March 4, 1942, and signed by the District Attorney, pro tem.

The information contains a statement in connection with the allegations set forth as No. (3) above, in substance, that Vergil Hansen, still relying upon the false and fraudulent statements, accepted delivery of the 1941 Plymouth sedan from said defendants and paid over to them as the balance of the purchase price of said automobile the sum of $541.38, *upon the fraudulent representations of said defendants, that they would immediately deliver to Vergil Hansen title to the 1941 Plymouth free and clear of any liens and/or encumbrances of any nature whatsoever.*

The inclusion of the italicized statement apparently is the principal source of difficulty in passing upon the pleading before us. We are not here concerned with a short form pleading. The District Attorney obviously has attempted to set forth every necessary element of the alleged crime. On several occasions this Court has announced the necessary elements of the offense of obtaining property by false pretenses. It did in *State* v. *Howd,* 55 Utah 527, 188 P. 628, and in more recent decisions has reaffirmed its holding in that case. See *State* v. *Casperson,* 71 Utah 68, 262 P. 294; *State* v. *Morris,* 85 Utah 210, 38 P. 2d 1097.

In *State* v. *Timmerman*, 88 Utah 481, 55 P. 2d 1320, 1322, 56 P. 2d 1354, this Court again set out the necessary elements of the crime in somewhat different language and arrangement. Here the Court announced the necessary elements under five headings:

"(1) There must have been false or fraudulent representations or pretenses. (2) The representations must have been made knowingly and designedly. (3) There must have been a concurring intent to cheat or defraud the person to whom the false or fraudulent representations or pretenses were made. (4) Something of value must have been obtained because of the false or fraudulent representations or pretenses. And (5) the party to whom the false or fraudulent representations or pretenses were made must have parted with something of value in reliance upon the false or fraudulent representations or pretenses, believing them to be true. R. S. 1933, 103-18-8."

The statute relied upon in the present action is the same one analyzed in the Timmerman case. We have the benefit of these decisions to guide our study of the information with which we are now confronted. There are also other opinions of this Court relating to the statute which will lend enlightment. In *State* v. *Fisher*, 79 Utah 115, 8 P. 2d 589, in passing upon the sufficiency of an information, this Court declared that the sufficiency of the information must be tested by its allegations, not by evidence introduced at the trial.

With these holdings in mind, we shall examine the information filed in the instant case. First, we shall give our attention to the italicized clause, heretofore referred to. We believe it proper to determine whether, under the provision of our Code, Sec. 105-21-42, U. C. A. 1943, this clause may be disregarded as surplusage, and if so, whether we would be justified in so doing. We are of the opinion that under the Code provision referred to this clause could be considered surplusage. It neither helps the pleading by adding any material elements, nor does it harm it by changing the nature of the alleged offense. Its inclusion makes the pleading more difficult to understand and necessitates a more critical analysis. The clause

recites an alleged promise of the defendants to immediately deliver to the purchaser title to the 1941 sedan. The allegation is not necessary, for when the defendants made the delivery of the new car and accepted the balance of the purchase price, which constituted payment in full, the law imposed upon them the obligation of giving clear title. However, as the District Attorney saw fit to include the statement and as the case was tried with it remaining in the information, we shall not disregard the clause, but leave it intact.

Are all the essential elements of the offense set forth in the pleading? Does the information allege facts which nullify the charge? The pleading contains every essential element. We have so concluded, fully aware that the law is well settled that the crime of obtaining property or money by false pretenses does not lie when based upon a representation that the promisor will do something in the future. It is essential that the representation be made relative to a material fact. See 35 C. J. S., False Pretenses, p. 646, § 8.

The information, after its introductory phrase, in substance alleges, that on or about November 20, 1940, at Brigham City, Utah, the defendants made an automobile trade with Vergil Hansen. Here we have an allegation of time, place and parties. Then follows, that the defendants agreed to give Hansen a trade-in credit on a new car in the sum of $475 for his old Plymouth, and to deliver to him a new 1941 Plymouth sedan, free and clear of any and all encumbrances upon Hansen paying the balance of the purchase price in the sum of $541.38. It is obvious that this is an allegation of a promise to do something at some future time. Credit was to be given for the old car. From the promise, Hansen knew he was to receive nothing but credit for the trade-in until some future time, when the promised 1941 Plymouth was to be delivered. In making the deal, Hansen placed confidence in the defendants. Had the defendants, after crediting Hansen on their books with

$475, refused or been unable to make delivery of the new car, Hansen's only redres would have been through civil action.

The allegations of the pleading up to this point are in fact and effect very similar to those in *State* v. *Howd,* supra. However, the second part of this paragraph is quite different. It alleges that at some time in the future the defendants will deliver a new car free and clear of encumbrances and at the same time Hansen shall pay the balance of the purchase price. This allegation is conditioned upon mutual performance.

Except to give the complete story of the transaction, these allegations could be discarded. The real meat of the charge comes at that time when the future time fixed by the parties arrived, and then constituted the present.

Then, according to the pleading, Hansen, relying upon the representations made by the defendants, accepted delivery of the new 1941 Plymouth sedan and paid the defendants the sum of $541.38. The defendants knew they were entitled to this payment only upon delivery of the car free of any and all encumbrances. The purchaser relied upon the promise, which at the time of the transaction last referred to became a present factual representation that the car was free of all liens and encumbrances. When accepting payment in full, failure of defendants to disclose the existence of a lien and relate the truth to the purchaser constituted a false pretense, just as effective as had the defendants stated, "Give us your money. Here is the car. It is free from all liens and encumbrances. We will deliver license plates to you in the morning." Fraud by silence, when circumstances require honest disclosure, may constitute grounds for prosecution as well as false statements. See 22 Am. Jur. 455, §§ 18, 19, footnote 10.

The fourth paragraph of the charge alleges criminal intent. In substance, it says that immediately before payment of the balance of the purchase price, the defendants knowingly and fraudulently, with intent to cheat Vergil Hansen, caused the new 1941 Plymouth to be registered in

the name of Platt Ballaine, and then and there obtained a loan on said car for $888.66 from the Continental National Bank & Trust Company by placing a lien upon said automobile. Then the pleading alleges failure to deliver clear title and damage to Hansen.

The purchaser got the automobile he traded for upon payment of the balance of the purchase price, but he never did, according to the pleading, receive clear title to the car. The law imposes certain obligations on a seller of personal property. At the time of delivery, when payment in full is made, there is an implied warranty that the seller has the ownership of the property or the right to sell, free and clear of encumbrances. Sec. 81-1-13, R. S. U. 1933 (now the same section in U. C. A. 1943), under the title, "Implied Warranties of Title," provides:

"In a contract to sell or a sale, unless a contrary intention appears, there is:

"(1) An implied warranty on the part of the seller that in the case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass.

"(2) An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.

"(3) An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made * * *."

The information, as shown by the foregoing examination, and being put to the tests as provided in Mr. Justice Moffat's opinion in *State* v. *Timmerman,* supra, shows clearly that it contains every essential element of the charge. There is not anything unusual about the transaction related in this case, except that the defendants, after being paid in full, failed to deliver clear title. The purchaser, upon delivery of the car, paid his money just as he might to a

merchant when buying a hat. The obligations under the law relative to sellers are the same whether one dealer sells hats and another sells automobiles.

It is common knowledge that generally, after an automobile is purchased, the buyer must wait some time for service and title to the car before he can take possession and drive away. When a dealer makes a sale of a car it is his duty, if paid in full, to give title immediately. Because of the nature of the business, this may take several minutes or an hour or two, and under some circumstances may take a day or more. Such circumstances do not place the dealer in the position that he need not give title because allowed the common time of business to deliver title and plates, as is customarily done.

It is contended that the italicized clause of the information that Hansen accepted delivery of the car upon defendants' promise that they would immediately deliver title, nullifies the charge, for the purchaser was advised he was not to have title until some future time. This is untenable. The purchaser was to be given title immediately after payment. This means he was to be given title just as soon as this could possibly be done in the usual performance of business. Immediately is defined as "without intervention; without delay; instantly; at once."

The information is sufficient and does not need support from the record. The record contains sufficient evidence to warrant submission of the case to the jury. We find no prejudicial error in the record, and as there was sufficient evidence to submit to the jury, we shall not disturb the jury's verdict in the case.

The judgment of conviction is affirmed.

LARSON, J., concurs.

WADE, Justice (concurring).

I concur with the opinion of Mr. Justice TURNER. The only question involved is whether the information alleges merely a promise to deliver in the future a clear title to

the car, in which case no offense would be charged, or whether it alleges that at the time the car was delivered and the balance of the purchase price paid there was a representation by the defendants that the title to the car was then free from encumbrances. At the time the contract was entered into, as alleged, there was only a promise to do a future act, that is, a promise to deliver the new car free and clear from encumbrances upon the payment of the balance of the purchase price. However, when the car was delivered pursuant to that promise and in reliance thereon the balance of the purchase price was paid, those acts, coupled with the previous promise that when the delivery was made the car would be free from encumbrances, constituted a representation by the defendants that the title to the car at the time of delivery was free and clear from encumbrances. That constituted a misrepresentation of the state of the title at the time of delivery, and not merely a promise to clear the title in the future. The part of the information which Mr. Justice Turner has italicized, adds in substance, that defendants at the time of the delivery of the car represented that they would immediately deliver title clear of encumbrances. This is not a promise to clear the title to the car in the future but is a promise to deliver the ownership certificate showing that the title is free from liens and encumbrances. If that is what was intended, that part of the information is consistent with the previous allegation of a present misrepresentation of the title at the time of delivery.

McDONOUGH, Justice (concurring in part and dissenting in part).

I am unable to agree with the majority in holding that the information alleges facts showing the commission of the crime of obtaining money or property by false representations. That a failure to make good a representation purely promissory in character is not a violation of Sec. 103-18-8, U. C. A. 1943, this court held in *State* v. *Howd,* 55 Utah 527,

188 P. 628. See also cases cited in 35 C. J. S., False Pretenses, 646, § 8; and 25 C. J. 590. And see reason suggested for the rule at page 452 of 22 Am. Jur. and cases there cited. The majority court here is in accord, but hold that the allegations do not reveal representation of a promissory character but state a misrepresentation of an existing material fact. In reaching such conclusion I fear that the court is looking at the information in light of the evidence—something the court below could not have done in ruling on the motion to quash. The question of whether the verdict should be by us set aside because of the insufficiency of the information is another and a different question. But the question of its sufficiency is resolved here as though on motion to quash. Because I think that the whole tenor of the information is that the defendants falsely represented that they would perform in accordance with promises made and that they failed so to do, thus violating the statute; I am of the opinion that the motion to quash below was erroneously denied.

In the first place the charge is of obtaining property *and* money by false pretenses. But the only property parted with by Hansen, according to the information, was his used car. This was parted with, the pleading advises us, because of the "false, fraudulent and felonious representation" that defendants would in the future upon payment of the balance of the purchase price deliver Hansen a new car free and clear of encumbrances. Thus is evidenced the theory of the pleader that such a promissory representation plus noncompliance will sustain a conviction under the statute. He then alleges that a month later the defendants delivered a new car to Hansen, and that the latter, "still believing the false, fraudulent and felonious statements," paid the balance of the purchase price to defendants; "upon the fraudulent representation that—[defendants]—would immediately deliver title to [the new car] free and clear of any liens and/or encumbrances of any nature whatsoever." This last recited allegation is not at all surplusage within the intendment of 105-21-42, U. C. A. 1943. It is a definite statement of the inducement for paying over the money.

What is thereby said is that Hansen, relying on the promise of the defendants theretofore made that they would deliver him a new car free of encumbrances, turned over the money upon defendants' representation then made that they would immediately deliver such title to him. This does not amount to an allegation that at the time of delivery of the new car, defendants represented—either expressly or by implication —that it was then unencumbered.

Were there an allegation in the information of such specific representation, I would be in accord with the interpretation placed upon the allegation in question by Mr. Justice WADE. For in such case we would but have to give both allegations effect by reconciling them. But I cannot agree that an allegation of a promise to deliver unencumbered title after delivery, coupled with a statement of reliance on a promise theretofore made that such would be done, is tantamount to alleging that defendants represented the title to be clear at the time of delivery.

While I am of the opinion that the motion to quash should have been sustained below, I am in accord with the holding here that the evidence adduced supports the verdict.

The evidence adduced by the state reveals that subsequent to the signing of the order for the purchase of the new car, which evidence in substance substantiated the allegations of the information relative thereto, Hansen made several inquiries of the defendants as to when he could get delivery. In the course of the conversations with them, Hansen agreed to certain modifications of the arrangement of November 20, whereby certain accessories were to be purchased by him and apparently some arrangement made as to his willingness to take a car of a different color than that earlier specified. The modifications would increase the balance he was required to pay by approximately $80. Defendants agreed to attempt to secure such car in Salt Lake City. These arrangements were made with defendants on December 23. The next day one of the defendants telephoned Hansen that he had the car for him at his place of business. Upon Hansen's arrival, Platt Ballaine went with him to

the home of Stanley Ballaine, who was at his home ill. Defendants' license plates being attached to the car—presumptively dealer's license plates—Hansen asked that he be given a windshield sticker so that he might operate the car. Stanley stated that he was out of stickers but that new license plates could be procured in a few days. Stanley filled in an application blank for securing such plates and while doing so asked Hansen whom he desired to have indicated there as lienholder. Hansen answered there was no lienholder, that "it was clear," "it is in my name"; that he had got the money and did not want the application to indicate any lien. At this point I digress from the recitation of the evidence to remark that since the Ballaines had on that very day placed a lien on the car equal to the total dealer's price thereof, and that that lien was evidenced on the title certificate issued to Platt Ballaine, the lien inquired about must have had reference to any lien which Hansen may have arranged to give some third party. Moreover, the answer to the query clearly revealed to the Ballaines, however obtuse they might be, that Hansen believed he was *then* and *there* getting a car title to which was unencumbered. Whether this question was asked by Stanley prior to or after the delivery of Hansen's check for the balance of the cash purchase price is not clear from the evidence, but as I view the matter it is immaterial.

During the course of this transaction at Stanley Ballaine's home, Hansen stated that he wanted to pay the taxes on the car and asked that a bill of sale be executed to him. Stanley Ballaine answered that he had no bill of sale forms, but would give him a paper which would enable him to take care of the taxes. Whereupon he wrote on a piece of paper a description of the car and an acknowledgment of receipt of a check for $541.38 as payment in full therefor, and after signing it gave it to Hansen.

The conduct revealed by the foregoing recital is such as to justify a jury concluding that the defendants "knowingly and designedly, by false and fraudulent representations or pretenses," obtained from Hansen money with

intent to cheat or defraud him thereof. I assume that had defendants, at the time of delivery of the car, stated to Hansen, in order to induce payment of the balance of the purchase price, that the vehicle was free and clear of encumbrances, no contention would be here made that such was not a false representation within the statute. To hold that their conduct on the occasion, viewed in the light of the previous transactions, was any less such misrepresentation would require reading into the statute a limitation not therein expressed.

Assuming that the conduct was with intent to defraud —which a jury might well find—there is no difference between such conduct and an oral or written representation, as evidence of what was in the minds of the defendants, what their objective was, what was the understanding of the other party to the transaction or what induced the payment of the money.

That there may be an implied as well as express representation of a past or existing fact under the statute in question, we have heretofore held. *State* v. *Jensen,* 74 Utah 527, 280 P. 1046. And see *Brennan* v. *State,* 141 Neb. 205, 3 N. W. 2d 217; *People* v. *Mace,* 71 Cal. App. 10, 234 P. 841; *Commonwealth* v. *Harper,* 195 Ky. 843, 243 S. W. 1053, 1055, and *People* v. *Etzler,* 292 Mich. 489, 290 N. W. 879.

WOLFE, Chief Justice.

I concur in the opinion of Mr. Justice McDONOUGH.