262 P.2d 960

STATE v. BRUCE.

No. 7830.

Supreme Court of Utah.

Nov. 5, 1953.

George S. Ballif, Provo, E. R. Callister, Jr., Atty. Gen., Richard J. Maughan, Salt Lake City, for appellant.

138

Alan H. Bishop, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant was charged with making and passing a worthless check for $1,075 for which he received titles to six used cars. The transaction occurred September 14, 1951; the check was postdated to September 17th. The court granted a motion to dismiss made by defendant and the State appeals to present to this court the question, whether a postdated check falls within the provisions of our bad check statute.[1]

It apparently has been too generally assumed that the fact that a check is postdated is an invariable and absolute defense to a criminal charge for making and passing it. This has resulted in a good deal of mischief. Bad check artists, have in some instances, used the postdating of checks as a device to cheat unsuspecting persons and remain immune from prosecution. It is therefore deemed advisable to set forth the following discussion of the statute in question.

The portions of our statute relating to bogus checks, material to the present inquiry, are:

"Any person who * * * wilfully, with intent to defraud, makes * * * or delivers any check, * * * *knowing at the time* * * * that the maker * * * has not sufficient

funds in, or credit with said bank * * for the payment of such check, * * is punishable * * *.

"The making, * * * or delivering of such check, * * * shall be prima facie evidence of intent to defraud." (Emphasis added.)

The emphasized words indicate that the statute denounces the passing of a bad check only where there is misrepresentation that the maker has money or credit *at the time* the bad check is passed. It logically follows that it does not apply when both maker and payee know that the check is postdated. Under such circumstances the clear inference is that the maker has not money to pay the check at the time, but intends to cover it by the postdate. Where the payee accepts it with that understanding, he is not relying on a representation that the maker has money in the bank *at the time,* but rather that it will be covered when it is presented on its date. This amounts to a promise to be performed in the future. Obviously such a promise may be made in good faith, but plans go awry, unexpected or uncontrollable events intervene, or a bona fide change of mind occurs, any one of which would negative the existence of an intent to defraud at the time the check was passed, thus eliminating an element essential to constitute the crime. Such reasoning is the basis of the general rule that a promise of performance in the future will

usually not support a charge of fraud.[2] We so held with respect to a postdated check in the case of State v. Trogstad.[3]

Yet it should be here observed that we do not disagree with the contention of the State that the fact that a check is postdated is not necessarily, under all circumstances, an absolute defense to a criminal charge for making and passing it. A maker might pass a postdated check under such circumstances that the payee is misled into believing, or in the use of due care could reasonably assume, the check to be of current date, and accept it in the ordinary course of business. If such be the fact, and the evidence would support a finding beyond a reasonable doubt that at the time he passed the check the maker (1) knew that he had not sufficient funds or credit to cover it, and (2) that he then had a present existing intent to defraud, a case sufficient to go to the jury would be made out.

We have recognized that a man's intention or state of mind is a fact which may be proved, and if shown to be falsely represented may form a foundation for actionable fraud.[4] In the case of Hull v. Flinders,[5] we quoted with approval from Ruling Case Law the following:

"  *   *   *   the intention to deceive is a condition of mind, which, when it exists, is as much a fact as is a condition of the body, notwithstanding that it is more difficult to prove;  *   *   * therefore, a misstatement of a man's mind is a misstatement of fact  *   * [but]  *   *   * to render nonperformance fraudulent the intention not to perform must exist when the promise is made,  *   *   *." [6]

The authorities just referred to are civil, but the principle is the same. It would be but to torture reason to maintain that the state of mind is a fact which can be proved in a civil case but would not be so with respect to crimes.

Thus, even though making a prima facie case may involve proof of a state of mind, i. e., an intent not to keep a promise to be performed in the future, no insuperable obstacle is presented. It is conceivable that the evidence may show facts sufficient to demonstrate beyond a reasonable doubt that at the time the check was made the maker did so "wilfully, with intent to defraud  *   *   *." Suppose for instance the evidence clearly indicated utter impossibility of the maker to perform. As a hypothetical case, assume a maker postdated a check when he had no account whatsoever and never had any intention of having one. To eliminate the possibility of argument or

---

2. 37 C.J.S., Fraud, § 11. See 95 A.L.R. 486, 496 et seq.

3. 98 Utah 565, 100 P.2d 564.

4. Nielson v. Leamington Mines & Exploration Corp., 87 Utah 69, 48 P.2d 439.

5. 83 Utah 158, 27 P.2d 56, 57.

6. 12 R.C.L. 262. See 37 C.J.S. Fraud, § 12, page 237; 23 Am.Jur. Fraud & Deceit, Sec. 106.

doubt, suppose further that in the presence of witnesses he had so declared and that he had a scheme to defraud the payee by the use of a postdated check because he knew that he would thus be immune from criminal prosecution; add to this the fact that he used active concealment, trickery or falsehood in leading the payee to believe the check was not postdated and that the circumstances were such that the payee, acting with due care, relied thereon and accepted the check as one of current date. Surely it would not then be contended that the maker should be rewarded for his chicanery and held immune from prosecution because he included the postdating of a check as part of his scheme to defraud.

▮ We conclude that in spite of the difficulty in proving a present existing intent to defraud where the check is postdated, if the payee. acting reasonably accepts the check as one of current date, and the facts would support a finding beyond a reasonable doubt that the defendant " * * wilfully, with intent to defraud * * *" passes a worthless check, the question of his guilt of the crime should be submitted to a jury.[7]

This approach accords with the purpose for which the statute was enacted. The rapid concourse of modern business and commerce requires the reliance upon many and often far-flung credit transactions, from city to city, across the nation and around the world. Its free flow and equilibrium depend upon the use of checks, drafts and other instruments evidencing debt and credit. The passing of worthless instruments of credit, although done by a very small minority, casts suspicion and doubt upon the honest and trusting; such abuses are so disrupting that they cannot well be tolerated. We agree with the thought aptly expressed by the Supreme Court of Missouri,[8] that such conduct "disarranges and retards the business affairs of every person and institution through whose hands such a check passes to the bank upon which it is drawn, and from which it returns by the same route to the person to whom it was delivered by the drawer. And this nuisance is so common, insufferable, and injurious as to cause the state to resort to 'the just exercise of its police power' * * *" to curb and prevent it.

▮ Our legislature, by the bad check statute above quoted, has attempted to eliminate such annoyances by making them criminal and imposing penalties therefor. This purpose should not be defeated by an interpretation of the statute which would permit one bent upon fraud to protect himself by using a postdate on the check as a refinement upon his roguery. If the other requirements of the statute are met, there is no reason why one who criminally

7. See State v. Howd, 55 Utah 527, 188 P. 628, which appears to be contrary, but dictum.

8. State v. Taylor, 335 Mo. 460, 73 S.W.2d 378, 380, 95 A.L.R. 476.

defrauds with a postdated check should not be held just as responsible as one who knowingly passes a bad check with a current date.

In the instant case, Mr. LeGrand Smith, who took the check, states that he did not notice that it was postdated. In attempting to prove the defendant's intent to defraud, the state produced evidence that the defendant's account had been closed, that he had had no money in the bank for over a month and that checks had been returned to him unpaid. Those facts, taken by themselves, would indeed seem very persuasive as to the defendant's fraudulent design at the time the check was passed. However, additional important facts shown by the evidence must be considered: Mr. Smith, upon being asked whether he had any reason to believe that Mr. Bruce (defendant) did not have money in the bank at the time, answered in substance:

"Well, unless you can assume [that] from the fact he asked for the titles to give to his bank * * *."

and further:

"All he said was that he needed the titles to give to his bank. Of course you can assume from that fact, that he needed them [the titles] so he could floor."

It is well known that the "flooring" arrangement amounts to placing the cars on the floor of the automobile dealer and pledging the titles with the bank for credit. Mr. Smith's own testimony manifests that he knew or had good reason to believe that the titles to the cars were to be used to procure credit with the bank for the purpose of covering the check. That being the fact, it would be a transaction where Mr. Smith was relying on the defendant's covering the check in the future, and so would be a credit transaction, bringing this case within the principle of State v. Trogstad,[9] referred to earlier in this opinion. We are not prepared to disagree with the ruling of the trial court that the evidence concerning the matter just referred to was sufficient so he could say, as a matter of law, that there was a reasonable doubt of the defendant's guilt. The order granting the motion to dismiss is therefore,

Affirmed.

McDONOUGH and WADE, JJ., concur.

WOLFE, Chief Justice.

I concur. Under the evidence it is clear that the automobile dealer to whom the defendant gave the postdated check treated it as a credit transaction. However, I agree with the majority opinion that under certain circumstances a postdated check may be the basis for prosecution under Sec. 76–20–11, U.C.A.1953, such as where it is given by a person who knows (1) that it is postdated, and (2) that there are not sufficient funds in his account to cover payment of the check, but fails to mention either of these facts to the receiver of the check.

9. See note 3, supra.

In this day and age when checks are widely used in commerce, I think the receiver of a check is reasonable in assuming that the check is currently dated and thus payable immediately until the contrary is called to his attention. Any other rule makes the receiver of checks bear the risk that sometime the date on a check will escape his or his employee's notice or that he will temporarily not have correctly in mind the current date and accept a postdated check while laboring under the impression that it is currently dated.

HENRIOD, Justice (concurring and dissenting).

I concur only in the result.

The main opinion contends that much mischief has resulted from the common belief that postdating is a defense under the statute. Not so much that a court could judicially notice it, and not nearly so much, if we wish to indulge in conjecture, as has the execution of worthless promissory notes. Much is made of the idea expressed in the old saw that the state of a man's mind is as much a fact as the state of his digestion,[1]—hence his intent is provable, though difficult. Granted, but intent is no factor if we follow the weight of authority

holding a postdate not the subject of prosecution under bad check acts.[2] We may as well say that we follow the minority and not the general rule. State v. Taylor, upon which Mr. Justice Crockett leans so heavily, was brushed aside in 95 A.L.R. 496 with the following: "The courts in the more recent cases have taken the view that such a check is not within the contemplation of such statute,—the Missouri court * * * (State v. Taylor) being the only exception."

As the main opinion asserts, it may be that "The rapid concourse of modern business and commerce requires the reliance upon many and often far-flung credit transactions," but facile as it is to a judge another, rapid business or the peregrinations of credit transactions should not preclude us from cocking an attentive ear for the fundamental rights of an accused, invoking the established authorities which presently inoculate him against a statute such as ours, and reminding ourselves of the traditional policy of resolving doubts in his favor.

It would not seem overburdensome in the law merchant to require that business men look at a check's date to determine whether it is a demand order to pay or only an assurance that funds will be available in the

1. Edgington v. Fitzmaurice, 1885 L.R., 29 Ch.Div. 483.

2. 95 A.L.R. 496; People v. Mazeloff, 229 App.Div. 451, 242 N.Y.S. 623; State v. Crawford, 198 N.C. 522, 152 S.E. 504; State v. Byrd, 204 N.C. 162, 167 S.E.

626; Com. v. Massaro, 97 Pa.Super. 149; Seaboard Oil Co. v. Cunningham, 5 Cir., 51 F.2d 321, certiorari denied 284 U.S. 657, 52 S.Ct. 35, 76 L.Ed., 557. See Anderson v. Bryson, 94 Fla. 1165, 115 So. 505. And see also In re Scott, 85 Cal.App. 170, 259 P. 101.

future. If they knew that a postdate would give rise to no criminal responsibility under the bad check statute, but must be treated as a promise to which only civil responsibility attaches, either they would refuse to accept it or treat it for what it is, a promise in futuro,—like any promissory note they customarily may receive in the course of their business, relying on the ability of the issuer, like that of the maker of a note, to pay when the day of reckoning arrives.