The STATE of Utah, Plaintiff and Respondent,

v.

Thomas Dean LAKEY, Defendant and Appellant.

No. 18250.

Supreme Court of Utah.

Feb. 25, 1983.

---

Shelden R. Carter, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

Defendant gave a personal check to a seller of goods, with the request that he not cash it on that day so defendant would have time to make a deposit to meet it. When the deposit was not made because expected income was not received, defendant's check was returned for insufficient funds and he was prosecuted for theft by deception. A jury found him guilty, and he was sentenced to one to fifteen years. Concluding that there was insufficient evidence for a verdict of theft by deception, we reverse the conviction.

The facts are essentially undisputed. At defendant's request, a salesman, Mr. Ryan, brought clothing samples to defendant's store on Friday, January 30, 1981. After viewing the samples, defendant decided to purchase them. Realizing he lacked sufficient means to do so, defendant asked Ryan to return on Monday because he could not pay cash until then. When Ryan replied that he could not return on Monday, defendant asked if Ryan would accept a personal check for the $2,763 price on condition that he not cash it that day (Friday), but merely deposit it in his checking account. Defendant told Ryan he had additional deposits to make before the check would clear. (At that time, defendant had knowledge of recent repeated assurances from three investors of imminent cash investments in his business totaling $6,000.) Ryan accepted the check on these terms and left the samples with defendant. Defendant's bank subsequently dishonored the check because of insufficient funds.[1]

In order to convict defendant of theft by deception, the prosecution had to prove that defendant obtained or exercised "control over [Ryan's] property by deception and with a purpose to deprive him

---

1. Defendant later offered to pay Ryan for the clothing in installments of ten percent per month, as he was doing with other accounts, but Ryan rejected the offer.

The bank closed defendant's account in February, 1981, because of an excessive number of bad checks.

thereof." U.C.A., 1953, § 76–6–405. Viewing the evidence in the light most favorable to the verdict of the jury, we have no difficulty in concluding that defendant obtained control over the clothing samples with a purpose to deprive Ryan of that control. "Purpose to deprive" includes a conscious object to "withhold property permanently" or to dispose of it "under circumstances that make it unlikely that the owner will recover it." § 76–6–401(3). Since defendant obtained the clothing samples to resell them in his business, there was surely sufficient evidence of purpose to deprive. *See State v. Forshee,* Utah, 588 P.2d 181 (1978).

The issue is whether property obtained by passing what turned out to be a bad check was obtained "by deception" in the circumstances of this case. It is noteworthy that defendant was not prosecuted for the crime of issuing a bad check, which is committed by one who issues or passes a check "knowing it will not be paid by the drawee and payment is refused by the drawee." § 76–6–505(1). In contrast, theft by deception is a statutory successor to the crime of obtaining money under false pretenses. That crime was not committed by passing a check that both parties knew to be postdated, *State v. Bruce,* 1 Utah 2d 136, 262 P.2d 960 (1953), or by passing a check to a payee who understood that he was to hold it for a time before cashing it. *State v. Trogstad,* 98 Utah 565, 100 P.2d 564 (1940). Whether those rules would apply to similar circumstances under the current criminal code depends on the statutory definition of "deception."

So far as pertinent here, as defined in § 76–6–401(5), "deception" occurs when a person intentionally:

(a) Creates or confirms by words or conduct an impression of . . . fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction; or

(b) Fails to correct a false impression of . . . fact that the actor previously created or confirmed by words or conduct

that is likely to affect the judgment of another and that the actor does not now believe to be true; or

. . . .

(e) Promises performance that is likely to affect the judgment of another in the transaction, which performance the actor does not intend to perform or knows will not be performed . . . .

■ Despite the State's argument to the contrary, subsections (a) and (b) provide no basis for conviction on the facts of this case because there was insufficient evidence that defendant had created, confirmed, or failed to correct a false impression of fact as to the sufficiency of his bank balance at the time he issued the check and obtained the property. In addition to defendant's own uncontradicted testimony that he told Ryan that additional deposits were necessary, Ryan admitted at trial that "there may have been some problems" if he had "gone down to the bank and asked for cash" on Friday, and that he knew defendant needed "some additional days to make deposits in his bank account to make sure the check was good."

■ The State's contention that defendant created a false impression that he would make sufficient deposits to cover the check by the time it was processed is unavailing as a theory of conviction under (a), since the use of the present tense in that subsection shows that it only applies to impressions of fact that are false at some present time. In view of the content and purpose of the statute, we think the critical time is the time when the defendant created or confirmed the impression for the purpose of affecting the judgment of another in the transaction. As with the predecessor crime of obtaining money under false pretenses, an unfulfilled promise of future performance will not suffice as a false representation of fact. *Cf. Ballaine v. District Court,* 107 Utah 247, 252, 153 P.2d 265, 268 (1944); *State v. Howd,* 55 Utah 527, 533, 188 P. 628, 630–31 (1920).

■ Subsection (b) is also unavailing with respect to the State's contention that

the defendant committed the statutory element of deception by creating a false impression that he would make deposits in the future. Since the crime is obtaining property "by deception," the deception must exist at the time the property is obtained. This means that under subsection (b) the previously created or confirmed impression of fact must be false when the property is obtained. (In addition, at the time the defendant fails to correct the impression of fact that is likely to affect the judgment of another, he must not believe that it is true.) So analyzed, subsection (b) is inapplicable to the facts of this case, since there was no "fail[ure] to correct" an "impression of ... fact" that was false on Friday, January 30, when defendant obtained the property. *Compare Ballaine v. District Court, supra* (false pretenses conviction affirmed where property obtained after defendant impliedly confirmed prior representation that had become false).

The State makes its most persuasive argument under subsection (e). Here the new crime of theft by deception enlarges on the prior crime of obtaining money under false pretenses, and specifies circumstances in which a promise of future performance can be an element of the crime. *Compare State v. Howd, supra.* But the statute does not turn every unfulfilled promise into deception. A promise of performance is deception only when the promising party "does not intend to perform or knows [it] will not be performed ...." § 76–6–401(5)(e). The first alternative is obviously inapplicable on the facts of this case.[2] The definition of the second alternative is critical.

▮ A person knows that a promise will not be performed "when he is aware" that the promise is "reasonably certain" not to be performed. § 76–2–103(2). Mere negligence is insufficient to satisfy this definition. The only evidence that defendant was aware that his promised deposit of the necessary funds was "reasonably certain" not

to be performed was testimony that previous checks had been bad and that the three investors defendant was counting on to contribute cash had previously failed to do so despite repeated requests. To the contrary was the uncontradicted testimony of defendant and his wife that each of four investors had promised $2,000 in cash investments and that three of these had recently assured defendant that their contributions were imminent. Two of these investors had promised payment on or shortly before the weekend of January 31, which would allow deposit of sufficient funds before Ryan's check would clear. These same two investors actually contributed $12,000 in merchandise to the business at about this time.

Each element of an offense must be proved beyond a reasonable doubt. U.C.A., 1953, § 76–1–501; *State v. Murphy,* Utah, 617 P.2d 399, 401–02 (1980). Viewing the evidence and the inferences that may reasonably be drawn therefrom in the light most favorable to the jury's finding of guilt, and applying the standard of review in *State v. Daniels,* Utah, 584 P.2d 880, 882–83 (1978), we are still unable to conclude that reasonable minds could believe that defendant committed deception, as defined in the statute, on Friday, January 30. While it is true that the necessary deposit was not made, this is not a case where the jury could find beyond a reasonable doubt that the party who promised the deposit had no reasonable prospect of being able to make it—*i.e.,* was "reasonably certain" that his promise would not be performed. Commercial misfortune is not a crime, and there is no theft by deception without proof of deception.

The judgment of conviction is reversed, and the case is remanded with instructions to dismiss the complaint and discharge the defendant.

STEWART and DURHAM, JJ., concur.

---

**2.** A person does not intend to perform if "it is his conscious objective or desire" not to perform. § 76–2–103(1).

There was no evidence that it was defendant's "conscious objective or desire" not to deposit sufficient funds by the time the check was processed.

HOWE, Justice, dissenting.

I dissent. Based on testimony recited in the majority opinion, I think a jury question was presented as to whether the defendant was "reasonably certain" that his promised deposit of the necessary funds could and would not be made. That testimony was: (1) previous checks which he had written did not clear his account, and (2) he had been counting on three investors who, despite repeated assurances, failed to contribute the cash he needed. In addition, it should be observed that the defendant's bank account for almost a month preceding January 30, 1981 had never contained funds sufficient to clear a check of the amount here involved. Contrary to the assertion made in the majority opinion, this is a case where a reasonable mind could conclude that the party who had promised to do so had no reasonable prospect of being able to make the deposit—i.e., was "reasonably certain" that his promise would not be performed.

I would affirm the jury verdict.

HALL, C.J., concurs in the dissenting opinion of HOWE, J.