STATE v. CASPERSON et al.
Appeal of SNYDER.

No. 4584.   Decided December 12, 1927.   (262 P. 294.)

*Badger, Rich & Rich,* of Salt Lake City, and *P. W. Spaulding,* of Evanston, Wyoming, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *Lawrence A. Miner,* Asst. Atty. Gen., for the State.

CHERRY, J.

The defendant, John M. Snyder was tried by a jury, found guilty, and sentenced to imprisonment in the state prison, upon a charge of obtaining a check worth $1,000 from Freed Finance Corporation by false pretenses. He appeals from the judgment and contends that the evidence is insufficient to support the verdict and judgment against him. The

controversy arose out of a transaction whereby the accused sold and assigned to the Freed Finance Corporation, for $1,000 paid to him therefore, a conditional contract of sale for an automobile to one Levi Waldron, in which contract the title to the automobile was purported to be vested in a corporation of which accused was an officer. The gist of the accusation is that the accused falsely represented ownership of the automobile described in the contract, and thereby unlawfully and fraudulently obtained the money paid therefor. Defendant asserts that, according to the uncontradicted evidence, there was no false pretense, and that the prosecutor was not defrauded, but got a valid, enforceable contract, good in all respects for what it purported to be, and precisely what it bargained for. Upon the essential facts in the case, there is no substantial conflict in the evidence. Casperson & Snyder, of which defendant was manager, was a corporation engaged in selling automobiles at retail at Salt Lake City. Its business was financed by two finance corporations, the Auto Securities Company and the Freed Finance Corporation. Money was furnished to the retail dealer by these finance corporations, from time to time, upon particular automobiles in the retailer's possession or those sold by it to others upon conditional sale contracts.

The form of the transaction in the ordinary case of automobiles in possession and for sale by the retailer was called the "floor plan," and, so far as disclosed by the evidence, consisted of lending money upon automobiles which were to be placed on the retailer's floor for sale purposes. With respect to "demonstrator" cars or salesmen's cars, the form of the transaction was a conditional sale contract between the retailer and its salesman by the terms of which the title to the car was retained by the seller until the purchase price, payable in installments, was paid, which contract was, by the seller, sold at a discount, and indorsed and guaranteed, to the finance company. Notwithstanding a provision in the contract that the vendee should not sell the car, it was the understanding by all three parties that

the salesman, or nominal vendee, should have the possession of and sell the car within 90 days, and take up the contract with the finance company. In the case of sales made to purchasers in the ordinary course upon deferred installment payments, conditional sales contracts, by which title was retained by the seller until the purchase price was paid, were taken from the purchasers by the retailer, which contracts were sold, indorsed, and guaranteed by the retailer to the finance company at a discount. The understanding and practice of the finance company and the retailer in this latter case was that if default was made by the purchaser in the payment of any installment, upon any contract, when due, the finance company looked to the retailer which had guaranteed the contract, and permitted it to repossess the car described in the contract, and allowed it 30 days' time in which to sell the car for the purpose of "taking up the contract." The retailer was permitted to make such sales, and the finance company relied and depended on the retailer in such case making payment to it out of the proceeds of such sale. Such was the practice and course of business as between the Auto Securities Company and Casperson & Snyder, involving many automobiles and a large sum of money, and extending over a considerable period of time during and preceding the acts complained of.

The particular transactions relied on by the state to establish the crime charged were as follows:

On March 30, 1926, Casperson & Snyder executed a contract with E. A. Child, a salesman then employed by it at its branch agency at Ogden, Utah, specifying that a certain described automobile was sold conditionaly to Child upon his paying the sum of $1,552.86 in monthly installments of $86.27 each, commencing April 30, 1926. The contract provided that the title to the car described should be retained by the seller until the purchase price was paid in full, and that the vendee should not sell or dispose of the same.

This contract was, by Casperson & Snyder, shortly after its execution, indorsed, guaranteed, and assigned to the

Auto Securities Company for the sum of $1,300. It satisfactorily appears from the uncontradicted evidence that the Auto Securities Company knew that Child was a salesman of Casperson & Snyder, that the car described was a "demonstrator" or salesman's car, and that under the arrangement Child was authorized and expected to exhibit the car for sale and sell it within 90 days. Two payments were made to the Auto Securities Company on this contract by Casperson & Snyder, one on June 15th, of $173.40, and another on July 14th, of $87.13.

On June 4, 1926, Casperson & Snyder, through its agents at Ogden, Utah, agreed to sell the same car described in the Child contract to Levi Waldron for a used car, valued at $825, and $1,114.24 in money. The car was delivered to Waldron upon his delivery of the used car and executing and delivering to Casperson & Snyder a conditional sale contract. with the usual provisions for retention of title by the seller and the promise to pay $544.18 on September 4, 1926, and $572.06 on December 4, 1926, etc.

Thereupon, John M. Snyder, the defendant, presented the Waldron contract to the Freed Finance Corporation, told its officers that his company had sold the car to Waldron, and offered to sell and did sell and assign the contract to it for the sum of $1,000, which was paid to him by the Freed Finance Corporation in the form of a bank check.

The defendant was convicted upon the theory that by the transaction mentioned he falsely pretended to the Freed Finance Corporation that Casperson & Snyder, by virtue of the Waldron contract, had the title to the automobile therein described and by such false pretense obtained from the Freed Finance Corporation the sum of $1,000, when in truth and in fact the title to the automobile described had been previously transferred to and was then owned by the Auto Securities Company by virtue of the Child contract, thereby defrauding the Freed Finance Corporation of the money so obtained.

Whether upon these facts the verdict and judgment against defendant can be sustained is the question to be decided.

The crime charged is defined by Comp. Laws Utah 1917, § 8344, as follows:

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, shall obtain from any other person any chose in action, money, goods, wares, chattels, effects or other valuable thing with intent to cheat or defraud any person of the same, if the value of the property so obtained does not exceed $50, is punishable as in cases of petit larceny, and when the property so obtained is of the value of more than $50, the person so offending shall be punishable as in cases of grand larceny."

Such statutes, like all other criminal ones, must be construed strictly as against accused persons, and liberally in their favor, and nothing not within their ∎ words held to be within ther meaning. 2 Bishop Crim. Law (9th Ed.) § 415.

In *State* v. *Howd*, 55 Utah 527, 188 P. 628, this court held that an essential element of the crime so defined by statute is that an actual fraud be committed.

In 25 C. J. 608, it is said:

"While the statutes do not in express language require that the person from whom the property is obtained should be defrauded thereby, but only that it is obtained with intent to defraud him, nevertheless it is held as a general rule that the crime is not committed unless the prosecutor is in fact defrauded. Hence, as a rule, the crime is not committed if the prosecutor gets out of the transaction just what he bargained for."

In *State* v. *Asher*, 50 Ark. 427, 8 S. W. 177, where accused falsely represented that a mortgage which he gave was a first mortgage, being urged thus to represent by the actual first mortgagee, it was held that the false pretense was not such as to render accused guilty of obtaining anything of value from another by false pretenses, since the

first mortgagee, by urging such false representation, waived his prior lien and thus rendered the mortgage fraudulently represented a first mortgage, and therefore the pretense was not actually false.

In *State* v. *Mathews,* 44 Kan. 596, 25 P. 36, 10 L. R. A. 308, where accused obtained a deed by fraud from the owner of real estate, and after causing the deed to be recorded, falsely represented to an innocent person that he was the owner thereof, and thereby obtained a loan upon the faith of a mortgage which accused executed upon the land, and the circumstances were such as to estop the rightful owner from asserting her title against the innocent mortgagee, it held that the mortgage was valid, and that the accused could not be legally convicted of obtaining the loan by false pretenses for the reason that he did not and could not cheat or defraud the innocent mortgagee who loaned him the money.

To the same effect is *State* v. *Wilson,* 73 Kan. 334, 343, 80 P. 639, 84 P. 737, 117 Am. St. Rep. 479. See, also, 2 Bishop Crim. Law (9th Ed.) § 417.

That a pretense false in fact and an actual fraud resulting in prejudice are essential elements of the crime in question, and must be proved to establish guilt, are general principles of law which we recognize and approve. The actual fraud and prejudice required, however, is determined according to the situation of the victim immediately after he parts with his property. If he gets what was pretended and what he bargained for, there is no fraud or prejudice. But if he then stands without the right or thing it was pretended he would then have, he has been defrauded and prejudiced by reason of the false pretense, and the offense is complete, notwithstanding thereafter he may regain his property, or the person obtaining it or another compensates him, or he thereafter obtains full redress in some manner not contemplated when he parted with his property.

The vital question here is whether or not, under the established facts in the case, the contract sold and assigned to the Freed Finance Corporation was what it was pretended to be, viz., a valid, enforceable contract, including ownership of the automobile described in it.

That the Auto Securities Company consented and agreed, when it bought the Child contracted, that the automobile described therein should be exhibited for sale and sold by the agent of Casperson & Snyder is a plain conclusion from the facts testified to by the state's witnesses. The very nature of the transaction as measured by their habit and course of dealing with "demonstrator" or salesmen's cars contemplated and required that the car should be so sold in the ordinary course of business. That such authority cannot be given without precluding and estopping the assertion of a retained title by the one who gives it, as against a purchaser for value without notice, is settled by the decisions of this and numerous other courts. *Jones* v. *Commercial Investment Trust*, 64 Utah 151, 228 P. 896; *Harrison* v. *Auto Securities Co.* (Utah) 257 P. 677. See annotation to *Gump Inv. Co.* v. *Jackson*, 47 A. L. R. 82.

The conditional sale of the car in question by Casperson & Snyder to Waldron was therefore an authorized sale and, so far as the Auto Securities Company is concerned, conveyed everything purported by the contract to be conveyed. The Auto Securities Company was estopped from asserting its title against Waldron. *Chucovich* v. *San Francisco Securities Corporation*, 60 Cal. App. 700, 214 P. 263. And by the same token the sale and assignment of the contract to Freed Finance Corporation must be considered as transferring what it purported to transfer, because that transaction was not only had upon the faith of the conditional sale to Waldron, but it was, in fact, a sale of the automobile itself, subject to Waldron's rights, and this was within the general authority and permission of Casperson & Snyder to sell the car. Of course, the Freed Fi-

nance Corporation was an innocent purchaser. Its lack of knowledge of the claim of the Auto Securities Company was the very essence of its complaint. We think it plain from the uncontradicted facts in the case that the Auto Securities Company had no title or right to the automobile described in the contracts in question, which it could assert against either Waldron or the Freed Finance Corporation. It follows that the pretense charged was not, in fact, false; that Freed Finance Corporation was not defrauded, but got, by the transaction, just what it bargained for. There was, therefore, a failure to establish the necessary elements of the offense charged, and the verdict and judgment cannot be sustained.

Judgment reversed.

THURMAN, C. J., and STRAUP, HANSEN, and GIDEON, JJ., concur.