## STATE v. MORRIS.

No. 5260. Decided December 28, 1934. (38 P. (2d) 1097.

*Geo. C. Heinrich,* of Logan, for appellant.

*Geo. P. Parker,* Atty. Gen., and *Byron D. Anderson,* Deputy Atty. Gen., for the State.

ELIAS HANSEN, Justice.

Defendant was charged with, convicted of, and sentenced to serve an indeterminate term in the State Prison for the crime of obtaining money in excess of $50 by fraudulent and false representations and pretenses. He appeals. Numerous alleged errors are assigned, only one of which needs be considered and disposed of on this appeal. At the conclusion of the state's evidence, defendant moved the trial court to direct the jury to render a verdict of not guilty. The motion was denied. Such ruling is assigned as error. In the main the facts upon which the conviction of the defendant rests are not in dispute and are as follows: During the year 1930 the defendant was the general manager of the Johnson Nuttall Motor Company, a Utah corporation. Such corporation was engaged in the business of selling at retail and repairing automobiles at Logan, Utah. In order to secure funds with which to operate its business, the Johnson Nuttall Motor Company from time to time sold and assigned its contracts for the sale of automobiles to the General Contract Purchase Corporation. During the latter part of the year 1930 the motor company was the owner of two used Hudson sedan automobiles. Each of such automobiles was of the value of at least $600. Early in November, 1930, a Mr. Clark went to the motor company for the purpose of purchasing an automobile. After some negotiations he and the motor company executed a written agreement dated November 6, 1930, whereby Clark agreed to buy, and the motor company agreed to sell, one of the Hudson sedan automobiles. As a down payment on the automobile, Mr. Clark transferred to the motor company a Ford automobile for

which he was given a credit of $285. By the terms of the contract for the sale and purchase of the Hudson automobile, Clark was to pay $376.68 in twelve monthly installments of $31.39 each; the first installment to be paid one month after the date of the contract. The contract provided that the title to the Hudson auomobile should remain in the motor company until the whole of the purchase price thereof was paid. Upon the execution of the contract the Hudson automobile was delivered to Clark. Early in the December following, Mr. Clark returned the Hudson automobile to the motor company for some repairs. While the automobile covered by the contract dated November 6, 1930, was being repaired, the other Hudson automobile was delivered to Mr. Clark and he used the same. On December 3, 1930, Mr. Clark and the motor company executed another contract by the terms of which Mr. Clark purported to buy, and the motor company purported to sell, the other Hudson sedan automobile so owned by the motor company. The contract of November 6th and the contract of December 3d were the same excepting as to the number and motor number of the respective automobiles. Defendant executed each of the contracts for and on behalf of the motor company. Soon after the contract of December 3d was executed, the defendant for and on behalf of the motor company sold and assigned such contract to the General Contract Purchase Corporation and received therefor the sum of $315. The assignment so made reads as follows:

"For value received, the undersigned does hereby sell, assign and transfer to General Contract Purchase Corporation, his, its or their rights in and to the above contract and the Motor Vehicle referred to therein and authorizes said Corporation to collect the amounts due thereunder and give receipt and acquittance therefor.

"To induce said Corporation to discount or purchase the note referred to in said contract and to accept this assignment, undersigned warrants that said Motor Vehicle is new and unused (unless otherwise stated in said contract) and that the down payment was made by Buyer in cash and not its equivalent, except as otherwise stated in said contract, and that no part thereof was loaned to Buyer by undersigned. Undersigned agrees that neither repossession of said Motor

Vehicle from Buyer for any cause, nor failure to file or record this contract when required by law (it being the duty of undersigned to file or record the contract), shall release undersigned from the obligation of this assignment. Undersigned warrants that title to said Motor Vehicle is free and clear of all liens and encumbrances and that undersigned has the right and power to assign such title by its assignment. Undersigned represents Buyer is over 21 years of age, that he is of good reputation, that he believes Buyer is financially able to pay the money obligation of said contract, that Buyer will not use or permit the use of said Motor Vehicle in violation of any laws and warrants that the representations on Buyer's statement are true. General Contract Purchase Corporation is hereby authorized to correct patent errors in said contract."

The automobile described in the contract assigned by the motor company to the purchase corporation remained for the most part in the possession of the motor company up to the time of the trial of this cause. So far as is made to appear there was no lien or encumbrance on that automobile.

The state offered evidence tending to show that defendant prepared the contract of December 3, 1930; that he informed Clark that the contract of December 3d covered the same automobile as was covered by the contract of November 6th; that if Clark would sign the contract of December 3d he would have an additional month in which to make his first payment and the original contract would be destroyed; that relying upon such representation so made by the defendant, Clark signed the contract of December 3d; that at no time did Clark purchase, or intend to purchase, the automobile covered by the contract dated December 3d; that all of the negotiations had between defendant and Clark with respect to the sale and purchase of the automobile were concerning the automobile covered by the contract dated November 6th; that at no time did Clark purchase, or negotiate for the purchase of, the automobile covered by the contract dated December 3d; that defendant did not destroy the contract dated November 6th, but on the contrary such contract was kept in the files of the motor

company; that prior to the transactions involved in this controversy the motor company had sold the automobile covered by the contract of November 6th to a son of the defendant; that such contract had been sold and assigned by the motor company to the purchase corporation; that the automobile so sold to the son of defendant had been returned to the motor company, which in turn sold it to Mr. Clark as evidenced by the contract of November 6th; that the purchase corporation would not have purchased the contract of December 3d had it not believed that such contract evidenced a bona fide sale of the automobile therein described; that in the event a purchaser of an automobile failed to promptly pay any installments on a contract of purchase assigned to the purchase corporation, the motor company was authorized to repossess such an automobile for and on behalf of the purchase corporation.

Much of the evidence offered by the state is controverted by that offered by the defendant, especially with respect to the negotiations had between the defendant and Clark with respect to the sale of the automobile covered by the contract of December 3d. The testimony of the defendant and his witnesses is to the effect that Mr. Clark had difficulty in reaching a conclusion as to which of the two Hudson automobiles he desired to purchase; that he inquired from the former owners and others concerning which was the better buy; that he desired first to purchase one and then the other automobile; that it was the practice of the motor company to try to satisfy their customers; that when a customer was not satisfied with one automobile the motor company tried to satisfy such customer with another automobile; that when the contract of December 3d was executed defendant assumed that Clark had fully concluded to purchase that automobile, and therefore he sold the contract to the purchase corporation; that thereafter Clark concluded definitely to purchase the automobile covered by the contract of November 6th and defendant again delivered that automobile to Clark. The evidence further

shows that the motor company made the monthly payments up to the time of trial on the contract of December 3d. After Mr. Clark made a few monthly payments on his contract, he refused to make further payments because, as he testified, he discovered that his contract did not cover the automobile which he actually purchased. The foregoing summary of the evidence, while somewhat general, will serve as a basis for our discussion and determination of the question of whether or not the evidence is sufficient to sustain the verdict.

This court is committed to the doctrine that before an accused may be convicted of obtainig money by false representations or pretenses, it must be made to appear that:

"(1) There must be an intent to cheat or defraud; (2) an actual fraud must be committed; (3) there must be a fraudulent representation or a false pretense for the purpose of perpetrating the fraud in obtaining the property of another; (4) the fraudulent representation or false pretense must be the cause which induced the owner to part with his property." *State* v. *Howd*, 55 Utah 527, 188 P. 628, 630.

The doctrine of that case has been reaffirmed in the cases of *State* v. *Casperson* (Appeal of Snyder) 71 Utah 68, 262 P. 294, 296, and *State* v. *Fisher*, 79 Utah 115, 8 P. (2d) 589. In the case of *State* v. *Casperson*, supra, this court said:

"That a pretense false in fact and an actual fraud resulting in prejudice are essential elements of the crime in question, and must be proved to establish guilt, are general principles of law which we recognize and approve. The actual fraud and prejudice required, however, is determined according to the situation of the victim immediately after he parts with his property. If he gets what was pretended and what he bargained for, there is no fraud or prejudice. But if he then stands without the right or thing it was pretended he would then have, he has been defrauded and prejudiced by reason of the false pretense, and the offense is complete, notwithstanding thereafter he may regain his property, or the person obtaining it or another compensates him, or he thereafter obtains full redress in some manner, not contemplated when he parted with his property."

The evidence before us in this case without conflict shows that after the sale and transfer of the contract of December 3d the General Contract Purchase Corporation was the legal owner of the automobile described in the contract; that such automobile was free and clear of all ■ claims and incumbrances and was of the value of $600. In that respect the purchase corporation received all it bargained for. According to the state's evidence, however, the purchase corporation did not receive all it bargained for, in that there was an apparent but not a bona fide sale of the automobile to Clark. Thus, in the instant case the purchaser received a part but not all that it bargained for. The only reasonable inference, however, which may be drawn from the evidence before us is that the purchase corporation received, and at the time of the trial had sufficient security to satisfy, the amount owing upon the contract, which it purchased. Under such facts may it be said that the defendant is guilty of the crime for which he stands convicted? We are of the opinion that the question must be answered in the negative. Before a recovery may be had in a civil action on the grounds of fraud, it must be established that the complaining party has sustained some damage on account of the fraud. Were this a civil case in which the purchasing company was seeking to recover a money judgment against the defendant on account of the fraud complained of, no recovery could be had because the evidence fails to show that the purchasing company sustained any injury. The mere fact that a party to a transaction may not have received all he bargained for does not give rise to civil liability. For stronger reasons the crime of obtaining money by false pretenses is not established in the absence of evidence showing, or tending to show, that that the claimed victim has sustained a pecuniary or property loss by reason of the transaction relied upon. The evidence before us fails to show that the purchase corporation sustained any loss by reason of purchasing the contract of December 3d, but on the contrary affir-

matively shows that in all probability it did not and will not sustain any loss.

From what has been said it follows that the judgment appealed from should be, and accordingly is, reversed.

In light of the conclusion thus reached it will serve no useful purpose to discuss the other assigned errors, because even though a new trial be had it is doubtful if a discussion and determination of the other assignments will be of any aid in such trial.

This cause is remanded to the district court of Cache county, with directions to grant a new trial.

STRAUP, C. J., and FOLLAND and EPHRAIM HANSON, JJ., concur.

CHRISTENSEN, District Judge, dissents.

MOFFAT, J., did not participate herein.