**The STATE of Utah, Plaintiff
and Respondent,**

v.

**Lawrence J. SORENSEN, Defendant
and Appellant.**

**No. 16827.**

Supreme Court of Utah.

Aug. 21, 1980.

Bryan L. McDougal of McDougal, Holey & Dahl, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant appeals from his conviction based upon a jury verdict of guilty on four counts of theft. We reverse.

The transactions giving rise to the criminal charges in this case arose from defendant's formation of Western Heritage, Inc. ("W.H.I."), for the purpose of assisting clients in establishing retail franchising operations. Defendant was the corporation's chairman of the board and its manager--director.

On April 4, 1978, David Candland and Lester Thatcher of Oregon contacted W.H.I. seeking property, financing, and professional assistance for an "Apple Dumplin'" restaurant to be established in Utah. Candland and Thatcher testified that defendant made the following representations to them: (1) W.H.I. could sell them a piece of property for their restaurant at 941 South State, Salt Lake City, Utah; (2) W.H.I. could procure for them one hundred percent leaseback financing; (3) W.H.I. was a large, successful real estate development firm with offices around the United States; (4) W.H.I. had been involved in numerous other successful projects similar to theirs; (5) W.H.I. had a commitment for $10,000,000 from an outside financing source; and (6) W.H.I. was run and staffed by members of the L.D.S. Church. Candland and Thatcher, in reliance on these representations, agreed to proceed with plans for the restaurant.

The defendant obtained additional substantial sums of money from either Candland or Thatcher on April 28, May 3, June 17, and in August. Defendant's convictions on four counts of theft were based on these transactions. There was testimony that these payments to defendant were induced

by his representations that they were needed to satisfy financing requirements but were refundable upon the approval and receipt of financing and that the funds would be held in a special trust or real estate escrow account. Additional representations were also made to assure Candland and Thatcher that their continuing investments were secure. Of the $44,000 paid to defendant, more than $28,000 was placed in the business account of W.H.I., not in an escrow account, and spent in the course of defendant's business.[1]

On appeal defendant contends the trial court erred in failing to instruct on the evidentiary requirements for establishing the offense of "false pretenses" and in excluding as hearsay defendant's testimony as to what a third party told him to establish his good faith in representing to Candland and Thatcher that financing was available. It was that representation that, at least in part, was the basis for Candland and Thatcher advancing money to him.

We examine first defendant's assertion that the trial court incorrectly ruled U.C.A. § 77–31–17[2] inapplicable to prosecutions alleging theft by deception. That section provides:

> False pretenses–Evidence of.–Upon a trial for having obtained ... from any person any money, personal property or valuable thing, the defendant shall not be convicted, if the false pretense was expressed in language, unaccompanied by a false token or writing, unless the pretense or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proved by the testimony of two witnesses, or that of one witness and corroborating circumstances ....

With the enactment of a new criminal code in 1973, the Utah Legislature incorporated into the new theft statute the offense of theft by "false pretense" and other theft–type offenses. Section 76–6–403 states:

> Conduct denominated theft in this part constitutes a single offense embracing the separate offenses such as those heretofore known as larceny, larceny by trick, larceny by bailees, embezzlement, false pretense, extortion, blackmail, receiving stolen property. An accusation of theft may be supported by evidence that it was committed in any manner specified in sections 76–6–404 through 76–6–410 ....

In enacting the 1973 criminal code, the Legislature did not expressly repeal § 77–31–17 of the Code of Criminal Procedure. Defendant claims that the evidentiary requirements of that section are applicable to prosecutions for theft by deception under § 76–6–403.

The former offense termed "false pretense" and the present offense "theft by deception" proscribe the same conduct: obtaining or exercising control over the property of another by deception and with a purpose to deprive him thereof, § 76–6–405(1). The element of fraudulent representation is embodied in the definition of deception as set out in § 76–6–401(5):

> "Deception" occurs when a person intentionally:
>
> (a) Creates or confirms by words or conduct an impression of law or fact that is false and that the actor does not believe to be true and that is likely to affect the judgment of another in the transaction ....

Contrary to the State's position, defendant claims that there is no basis for implying a repeal of § 77–31–17, which requires corroboration in a theft by deception case. Defendant's position is sound. Although the title of § 77–31–17 uses the term "false pretense," the language of the statute deals with only evidentiary requirements and not the substantive elements of

---

1. This brief recital of facts is based on the evidence that supports the jury verdict. Defendant testified on his behalf that all of the payments were received as installments on the

sale price of the State Street property pursuant to an earnest money agreement.

2. All statutory references are to Utah Code Ann. (1953), as amended.

the crime. It is axiomatic that implied repeals are not favored and occur only if there is a manifest inconsistency or conflict between the earlier and the later statute. *Salt Lake City v. Towne House Athletic Club*, 18 Utah 2d 417, 424 P.2d 442 (1967); *Glenn v. Ferrell*, 5 Utah 2d 439, 304 P.2d 380 (1956); *Moss ex rel. State Tax Comm'n v. Board of Comm'rs of Salt Lake City*, 1 Utah 60, 261 P.2d 961 (1953).

There is no direct conflict or inconsistency of any kind in this case. Section 76–6–405 only addresses the substantive elements of the crime, not the type of proof necessary to prove the substantive elements. As this Court held in *Moss v. Board of Comm'rs, supra*, whenever a later statute deals with the subject matter of an existing statute, both statutes should be given effect if they can stand separately.

The State errs in its argument that the enactments at issue are inconsistent because they differ as to the evidence that can be used to prove theft. Section 76–6–403 of the new code, set out *supra*, states that an accusation of theft may be supported by evidence establishing any of the different types of theft offense found in § 76–6–404 through 76–6–410. Section 76–6–403 does not specify the type or quantum of evidence required, nor does it deal with evidentiary standards in any respect.

On the other hand, § 77–31–17 of the Code of Criminal Procedure, *supra*, provides that conviction of the offense must be based on a writing, or on the testimony of two witnesses or of one witness and corroborating circumstances. This provision is simply not inconsistent with the new statute. Section 77–31–17 applies in full force to a charge under § 76–6–405 that is the equivalent of a charge of theft by deception under the old statute. See *People v. Fawner*, 29 Cal.App.2d 775, 77 P.2d 325 (1938),

and *People v. Carter*, 131 Cal.App. 177, 21 P.2d 129 (1933), in which the California court also rejected the contention of repeal by implication with respect to similar statutes.

A reversal for error, of course, is not automatic; it is appropriate only if the defendant was prejudicially affected by the error.[3] Upon reviewing the record, we are convinced that the failure to give an instruction based on § 77–31–17 was prejudicial in this case.

In the first place, defendant was charged with theft "and/or" theft by deception and was found guilty of theft "as charged in . . . [the] Information."[4] Such alternative pleading clearly raises serious questions as to the propriety of the pleading. The four counts on which defendant's convictions were based used identical language except for variations in dates and the names of the alleged victims. Count I, for example, alleged:

That on or about the 28th day of April, 1978, to and including the 6th day of May, 1978, in Salt Lake County, State of Utah, the said Lawrence J. Sorensen did obtain by deception or exercise unauthorized control over the property of another with a purpose to deprive him thereof, to—wit: money of a value exceeding $1,000.00, the property of David Candland

. . . .

There is nothing in the record to indicate which specific acts supported the four separate counts or to which of the theft offenses charged in each count they were intended to relate. There was testimony that the defendant falsely represented that funds paid to him in two of the four transactions would be held in a special trust or real estate account. The record does not disclose, however, what misrepresentations were relied on by Candland and Thatcher in

**3.** Section 77 42 1, U.C.A., provides:

Judgment to disregard errors not affecting rights of parties. -After hearing an appeal the court must give judgment without regard to errors or defects which do not affect the substantial rights of the parties. If error has been committed, it shall not be presumed to

have resulted in prejudice. The court must be satisfied that it has that effect before it is warranted in reversing the judgment.

**4.** The Information accused defendant of six counts of theft "in violation of Title 76, Chapter 6, Sections 404 and/or 405, Utah Code Annotated, 1953, as amended."

making each one of the payments to defendant. This Court is therefore unable to determine whether the evidence relating to defendant's alleged deceptive representation was sufficient to satisfy the requirements of § 77–31–17.[5]

Given these circumstances, we cannot conclude that any of the convictions were based on evidence that met the requirements of § 77–31–17. Although more than two witnesses testified at trial, the jury may have based is verdict on the credibility of only one witness or on uncorroborated evidence without satisfying the statutory requirement. Inasmuch as the jury was not instructed as to the necessity of corroboration or the type of evidence required for conviction, the failure to give the requested instruction based on § 77–31–17 requires reversal.

Defendant's second contention is that the trial court improperly excluded statements as hearsay which were offered to prove that defendant did not knowingly and intentionally make false representations concerning financing. There is also merit in this contention.

■ The record indicates that the State presented evidence that the defendant had induced Thatcher and Candland to pay large sums of money to W.H.I. by falsely representing to them that, *inter alia*, there was available through W.H.I. one hundred percent leaseback financing for their restaurant. A conviction of theft by deception requires a determination by the jury that the defendant intentionally made a fraudulent misrepresentation. *State v. Howd*, 55 Utah 527, 188 P. 628 (1920).

The trial court on one occasion excluded defendant's testimony as to statements by a Mr. King to defendant that financing was available to W.H.I. for the restaurant project. The testimony would clearly have been hearsay had it been offered to prove

the actual existence of available financing and would, if offered for that purpose, be inadmissible pursuant to Rule 63, Utah Rules of Evidence.

■ But that was not the reason that evidence was offered. Defendant sought to introduce the evidence as proof of his good faith in making the representations regarding financing. If in fact the statements attributed to King were made, their truth or falsity is immaterial since in either event they tend to substantiate defendant's good–faith belief in being able to obtain financing. When an out–of–court statement is offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule. *State v. Hayes*, Utah, 572 P.2d 368 (1977); *State v. Sibert*, 6 Utah 2d 198, 310 P.2d 388 (1957); *People v. Contreras*, 201 Cal.App.2d 854, 20 Cal.Rptr. 551 (1962); *A. C. Ferrellgas Corp., Inc. v. Phoenix Insurance Co.*, 187 Kan. 530, 358 P.2d 786 (1961); *Hutchins v. State*, Wyo., 483 P.2d 519 (1971); 6 *Wigmore on Evidence* §§ 1788 and 1789 (Chadbourn rev. 1976). In such circumstances, the witness only states under oath a fact as to which he asserts personal knowledge. The witness is, of course, subject to full cross–examination concerning such testimony. Evidence of a statement by a third person is therefore admissible, irrespective of the fact that it was made out of court, if it is offered to support a defense of good faith. *Frank v. United States*, 220 F.2d 559 (10th Cir. 1955); *Robert A. Pierce Co. v. Sherman Gardens Co.*, 82 Nev. 395, 419 P.2d 781 (1967). The initial exclusion of that evidence was therefore error.

Whatever error resulted therefrom was cured, however, by testimony offered and received at a later point that King had offered financing.[6] In short, defendant had

---

5. Although there is reference to a writing that would be pertinent to the issue of whether the prosecution's evidentiary burden was met, there is no documentary evidence in the record.

6. Although the court sustained the State's objection to defendant's stating what "Mr. King

informed [him]," the following testimony was given by defendant without objection:

[Candland and Thatcher] were going to pay themselves back out of the funds that would be coming forth from the funding essentially from Mr. King, because he at that time had represented to us that he was funding on a

the benefit of the evidence which at one point was excluded but was later admitted.[7] There was no prejudicial error committed in the exclusion of evidence by the trial court.

Because of the error in failing to instruct on the prosecution's evidentiary burden in this case, the judgment of conviction is reversed, and the matter is remanded for a new trial.

CROCKETT, C. J., and WILKINS, MAUGHAN and HALL, JJ., concur.

hundred percent basis, both the equipment, the building, the lot and in some cases franchise fee; in this particular case it was not applicable in the hundred percent financing. And he stated or excuse me–he represented to us that he had done this previously on a number of occasions. And so when the funds would be forthcoming they would pay themselves back for any land that they had acquired or any expenses that they were out at that point.

\* \* \* \* \* \*

Well, at that time we had been told by Mr. King that on the strength of the statement that we had already submitted to him, that he would fund projects for us personally as Western Heritage.

Candland testified:

I saw a document presented to me from Larry Sorensen from Mr. King saying that a block of money had been committed to Larry Sorensen for him to loan at his discretion.

7. Defendant did not make a proffer that indicated the evidence he sought to introduce went beyond the fact of the availability of financing as admitted in subsequent testimony.