STATE of Utah, Plaintiff and Respondent,

v.

John Louis WALTON, Defendant and Appellant.

No. 17139.

Supreme Court of Utah.

April 21, 1982.

**14.** See *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

D. John Musselman, Orem, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant, John Louis Walton, appeals his conviction by a jury in the Sixth Judicial District Court, Sevier County, Utah of two counts of theft by deception, a second degree felony in violation of § 76–6–405, U.C.A.1953.

During 1977 Walton was a partner in an insurance agency named Walton, Snelgrove & Jones Insurance located in Salina, Utah. His duties included meeting with the public and making sales. He was also responsible for all deposits of the agency and he kept the checks and financial records in his sole possession. Snelgrove and Jones were generally responsible for submitting applications for insurance to the various insurance companies for whom they solicited and for arranging the desired coverage. The agency business was comprised generally of commercial accounts involving substantial coverage for large amounts of money.

In March of 1977 the defendant sold Art Robinson a policy of insurance to be issued by Aetna Insurance Company. It was a comprehensive policy to cover both liability and physical damage to the trucks used in his coal hauling operation. The policy premium totaled $13,633 of which $10,000 was for physical damage coverage. He made the premium payments directly to the defendant.

In June of 1977 defendant sold Glen Barney a similar policy of insurance pursuant to his order for full coverage, including liability and physical damage. The total premium paid by Barney was $25,140 of which $20,000 was for physical damage coverage. All premium payments were made to the defendant.

In December of 1977 Barney filed a claim with Aetna seeking recovery for damages to his trucks. Aetna refused to pay since the policy which it issued and sent to the defendant for delivery to Barney provided liability coverage only and had no coverage for physical damage. Consequently, Barney had to bear the loss to his trucks which amounted to approximately $18,000.

The defendant had been informed by a representative of Aetna in September of 1977 that the company was unable to provide physical damage coverage for either Robinson or Barney. The defendant, however, never informed the insureds that the policies he delivered to them were different from those which they had ordered, and he continued to collect the full amount of premium from them. A comparison of the policies in the possession of the agency and the policies which the defendant delivered to the insureds indicated that their policies were altered to include physical damage coverage.

Defendant urges reversal of his convictions claiming first that the evidence adduced at trial does not show that the victims sustained a monetary loss by reliance upon the defendant's representations. In so arguing defendant points to subsection (2) of § 76–6–405, U.C.A.1953, which provides in part:

> Theft by deception does not occur, however, when there is only falsity as to matters having no pecuniary significance . . . .

■ Contrary to defendant's assertions, the transaction between the defendant and the two insureds resulted in pecuniary loss to them. They requested and paid for coverage for physical damage to their equipment, in addition to liability coverage. After Aetna notified the defendant that the physical damage coverage could not be provided, he continued to collect the full premium from the victims, did not advise them of the limited coverage and deceitfully altered the insured's copy of the policy to show full

coverage. Barney has had to bear an $18,-000 loss even though he had paid for insurance to cover that loss. In view of these facts it is clear that there is competent evidence upon which to base a finding that the victims sustained monetary loss.

The defendant argues that the insureds received exactly what they bargained for since they could sue Aetna because it is responsible for the acts of its agent, the defendant, and that his conviction is premature since a civil suit by Barney is now pending against Aetna. Defendant cites three cases in support of his position, *State v. Nuttal*, 16 Utah 2d 171, 397 P.2d 797 (1964), *State v. Morris*, 85 Utah 210, 38 P.2d 1097 (1934), and *State v. Casperson*, 71 Utah 68, 262 P. 294 (1927). These cases are factually distinguishable from our case in that the victims there received what they bargained for and lost nothing. In the instant case, however, neither of the insureds received that for which he bargained. As a result of the defendant's deception the insureds paid for insurance coverage which did not exist and the defendant thereby gained control over their money. That the insureds may have a civil remedy against Aetna does not excuse the criminal conduct of the defendant. Our law provides:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense . . . shall be criminally liable as a party for such conduct. § 76–2–202, U.C.A. 1953.

Even if the insureds are successful in making Aetna responsible for its agent's acts, it is highly questionable that the insureds will ever be made completely whole. We must consider that they will spend their time in pursuing their lawsuits for which they will never be fully compensated, and will incur attorney's fees for which they probably will not be reimbursed. They paid for and were entitled to have received a policy of full coverage. Instead, they are in the dubious position of having limited insurance coverage with a possible claim against the defendant's principal, the outcome of which is uncertain but at best will never restore them to the position their premium should have purchased for them.

We observed in *State v. Casperson*, supra, in construing a statute which was a predecessor to the statute involved in the present case that a pretense, false in fact and an actual fraud resulting in prejudice, are essential elements to the crime of obtaining money by false pretenses. We there pointed out the following which is equally applicable in the instant case:

> The actual fraud and prejudice required, however, is determined according to the situation of the victim immediately after he parts with his property. If he gets what was pretended and what he bargained for, there is no fraud or prejudice. But if he stands without the right or thing it was pretended he would then have, he has been defrauded and prejudiced by reason of the false pretense, and the offense is complete, notwithstanding thereafter he may regain his property, or the person obtaining it or another compensates him, or he may thereafter obtain full redress in some manner not contemplated when he parted with his property.

■ Defendant next contends that the italicized sentence in the following instruction which was given to the jury was erroneous and requires a reversal of his conviction:

> The law provides that there are certain presumptions which may have application to your deliberations in the instant case. Presumed facts must be proved beyond a reasonable doubt, but the law regards the facts giving rise to the presumption as evidence of the presumed fact. Evidentiary presumptions which you may employ include the following:
>
> 1. Purpose or knowledge, being states of mind, are not always susceptible of proof by direct and positive evidence and must ordinarily be inferred from acts, conduct, statement, and circumstances. *The law presumes that a person intends the reasonable and ordinary consequences of his own acts.*
>
> 2. . . .
>
> [Italics added.]

We agree with the defendant. The United States Supreme Court in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), held that when intent is an element of the crime charged, an instruction to the jury that "The law presumes that a person intends the ordinary consequences of his voluntary acts" violates the due process clause of the Fourteenth Amendment. The court pointed out the danger of such a statement:

First, a reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless the defendant proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

It is true that in the instant case, the jury was told that it *may* employ the presumption. It was not compelled to do so. That fact, however, does not eliminate the error. Since it was given the option of employing the presumption, we have no way of being assured that the defendant was not convicted on the basis of that presumption. The presumption was not permissive in the sense that the jury was told that it could be considered along with other evidence in resolving the issue of intent. Rather, the jury was told that it could employ the presumption. If it did, it may have fallen victim to the mischief pointed out in *Sandstrom v. Montana*, supra.

Neither was the error cured by a further instruction which was given that:

. . . the evidentiary presumptions provided for in other instructions do not relieve the State of its burden to prove the Defendant guilty beyond a reasonable doubt, and further do not relieve the State of its burden to prove each element of the particular offense being considered by you.

While this instruction was correct and should have been helpful in assisting the jury to understand the function of presumptions, it did not assuage the error. If the jury interpreted the presumption as conclusive, the State's burden of proof was automatically met irrespective of other evidence on the question of intent. Telling a jury that the law presumes something, gives it the aura of being the final word on the subject and may have misled the jury.

We condemned the use of the presumption in instructions given in *State v. Robichaux*, Utah, 639 P.2d 207 (1981), but pointed out that the jury may be told that it "may, on the basis of all the evidence, including the *inference* that people usually intend the natural consequences of their acts, find that the defendant intended the natural consequences of his act." We affirm that suggested practice here.

The defendant's conviction and judgment entered thereon is reversed and the case is remanded for a new trial.

HALL, C. J., and STEWART and OAKS, JJ., concur.

DURHAM, J., does not participate.