STATE of Utah, Plaintiff and Respondent,

v.

Jeffrey McIntyre ROBERTS, Defendant and Appellant.

No. 19398.

Supreme Court of Utah.

Aug. 8, 1985.

Earl Xaiz, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice.

Defendant appeals a conviction of theft by deception, a second degree felony. U.C.A., 1953, § 76–6–405(1). Defendant contends that the evidence introduced at trial was insufficient to establish the crime of theft by deception. We affirm.

In 1978, the State's primary witness, David Rail, sold a life insurance policy to Miriam Marlowe's husband. The Marlowes and Rail subsequently became good friends. In July 1981, Marlowe's husband died in a swimming accident. In March of 1982, Rail informed Marlowe that her husband's life insurance policy was still in force and that she was entitled to the proceeds as the named beneficiary. Under the provisions of the policy, Marlowe was entitled to approximately $50,000. Rail told Marlowe, then a resident of California, that she would receive the entire $50,000 from

the policy. However, only $38,000 would be paid initially because California law required one-fourth of the proceeds to be retained pending final settlement of the estate.

During the time Rail was processing the claim, he mentioned the $50,000 in insurance proceeds to John Walton, a friend who had an office in the same building. Defendant learned of the claim while present during a discussion of the matter between Rail and Walton. Several days later, defendant approached Rail and asked Rail if he would be interested in convincing Marlowe to invest the insurance proceeds. Defendant told Rail that he had a friend who worked for the State Department and had access to gold in Brazil. The gold could be purchased in Brazil for $100 an ounce and sold in the United States for approximately $300 an ounce. Rail discussed the wisdom of the investment with an attorney, who advised him not to invest the money unless some form of security was obtained.

After the insurance claim was processed, Rail flew to California and personally delivered the check for $38,000 to Marlowe. At the same time, Rail related to Marlowe defendant's story about the South American gold connection. Rail explained that if Marlowe invested some of her insurance proceeds, she would double her money within 90 to 120 days. Rail and defendant would divide any remainder as payment for their services. Marlowe agreed to invest $25,000 if she could get some security for her money.

Defendant offered a building lot located in Sherwood Hills in Provo as security. Defendant represented to Rail that he owned the lot free and clear. However, a title search performed at Rail's request revealed that the property was not free and clear as defendant had represented. There were two encumbrances: a $6,200 tax lien on the property and a default on a trust deed in the amount of $16,000. When Rail confronted defendant with this information, defendant assured Rail that the title would be cleared by the following Tuesday. Based upon this assurance, Rail agreed to invest Marlowe's money.

Rail contacted a title company and asked that documents be drafted for a transaction involving land used as security for a cash investment. On April 15, 1982, Rail and defendant met at the title company. However, defendant refused to sign the trust deed prepared by the title company insisting that the title company prepare a warranty deed instead. He told Rail that a warranty deed was better security than a trust deed. Although the use of a warranty deed under these circumstances was somewhat unusual, the deal was closed utilizing the warranty deed.

On the same day as the closing, defendant informed Rail that there had been a change of plan concerning delivery of Marlowe's money. Originally, both Rail and defendant were to fly to Brazil and give the money to the State Department official there. However, defendant now said that the State Department official's wife, who lived in Salt Lake City, was going to fly to Brazil to visit her husband. Defendant suggested that he would give the money to the wife for delivery and thus save the expense of flying to Brazil. Based upon these representations, Rail gave defendant a check made payable to JARCO [1] in the amount of $24,861 ($25,000 less the cost of the title search).

In July of 1982, Rail discovered that the property defendant had conveyed as security was in default and subject to a sheriff's sale. In an effort to preserve his client's equity interest in the security, Rail personally borrowed $16,000 and purchased the property for the amount of the default on the trust deed. [2] After repeated efforts to recover Marlowe's money from defendant had failed, Rail contacted the Utah County Attorney's Office.

---

1. Defendant explained that JARCO was the name of the corporation set up by the people in Brazil to handle income from their gold transactions.

2. Various estimates and appraisals of the true value of the property range from $38,000 to $50,000.

The County Attorney's investigation revealed that on April 16, 1982, defendant had opened an account at the Midvale Branch of Tracy-Collins Bank in the name of Jeffrey McIntyre Roberts, d/b/a JAR-CO, and deposited Marlowe's money in this account. On April 17, defendant withdrew $12,500 cash from the account. Testimony at trial was conflicting as to what defendant used the money for. However, it was undisputed that no attempt was made to invest the money in Brazilian gold.

By the date of trial, none of Marlowe's money had been returned to her. She held title to the "security" property subject to the debt of $16,000 incurred by Rail to secure the title and $6,200 in tax liens.

Defendant's theory throughout trial was that the transaction between him and Marlowe was a sale of property, as evidenced by the warranty deed, where each party received value. At the end of the State's case, defendant moved for a directed verdict of not guilty based on insufficiency of the evidence. Defendant contended that the State had failed to prove that Marlowe had suffered any pecuniary loss. The trial court denied the motion.

At the close of the evidence, defendant requested the court to give instructions on pecuniary loss. The trial judge refused to give any of those instructions. Counsel for defendant took exception to the court's refusal.

The jury found defendant guilty of theft by deception.

Defendant's first point on appeal is that the evidence introduced by the State at trial was insufficient to establish the crime of theft by deception. Defendant contends that the State did not prove beyond a reasonable doubt that the alleged victim had

lost something of pecuniary value, relying on *State v. Johnson*, Utah, 663 P.2d 48 (1983).

■ This Court has consistently held that when sufficiency of the evidence is questioned on appeal, the Court will review the evidence and the reasonable inferences therefrom in the light most favorable to the jury verdict.[3] A jury verdict will be reversed only when the evidence is "sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted."[4]

U.C.A., 1953, § 76-6-405 states:

(1) A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof.

(2) Theft by deception does not occur, however, when there is only falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed. "Puffing" means an exaggerated commendation of wares or worth in communications addressed to the public or to a class or group.

■ Thus, in order to prove that a defendant has committed theft by deception, the State must prove beyond a reasonable doubt that the defendant has (1) obtained[5] or exercised control over[6] the property[7] of another; (2) by deception[8] and; (3) with a purpose to deprive[9] that person of the property.[10]

■ In this case the State sought to establish theft by deception based on the type of deception defined in U.C.A., 1953, § 76-6-401(5)(e):

**3.** *State v. Griffin*, Utah, 685 P.2d 546, 547 (1984); *State v. Petree*, Utah, 659 P.2d 443, 444 (1983); *State v. Kerekes*, Utah, 622 P.2d 1161, 1168 (1980).

**4.** *Petree, supra* note 3, at 444.

**5.** As defined by U.C.A., 1953, § 76-6-401(2).

**6.** As defined by U.C.A., 1953, § 76-6-401(4).

**7.** As defined by U.C.A., 1953, § 76-6-401(1): "Property means anything of value...."

**8.** As defined by U.C.A., 1953, § 76-6-401(5).

**9.** As defined by U.C.A., 1953, § 76-6-401(3).

**10.** *See, e.g., State v. Sorensen*, Utah, 617 P.2d 333, 335 (1980).

"Deception" occurs when a person intentionally:

. . . .

(e) Promises performance that is likely to affect the judgment of another in the transaction, which performance the actor does not intend to perform or knows will not be performed; provided, however, that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

Under that definition the evidence was sufficient to support defendant's conviction.

Defendant clearly obtained control over Marlowe's money with the purpose to deprive her of it.[11] Defendant also obtained the money by deception as defined in section 401(5)(e). Defendant represented that he would invest the money in gold and would clear title to the land used to secure the transaction. The jury could have reasonably inferred from the evidence that defendant did not intend to perform and knew that he would not perform as promised. Furthermore, the evidence clearly supports the conclusion that defendant's representations that he would invest in gold and offer as security for the invested money unencumbered land affected Marlowe's judgment concerning her investment, and were in fact fundamental to the transaction. Therefore, under the terms of the relevant statutes defendant's conduct constituted theft by deception.

Defendant, however, contends that section 405(2) and *Johnson* established another element of the crime of theft by deception: pecuniary loss on the part of the victim. In *Johnson*, this Court said: "[A]n essential element of the criminal offense of theft by deception [is that the victim] failed to get what it bargained for *or that it sustained a pecuniary loss.*" (Emphasis added.)[12] In reaching that result, the Court also relied on section 405(2).[13]

Section 405(2) is modeled after section 223.3 of the Model Penal Code. That section states: "The term 'deceive' does not, however, include falsity as to matters having no pecuniary significance. . . ." The pertinent part of section 405(2) is identical.[14] In the commentaries, the American Law Institute explains the reasoning behind the "no pecuniary significance" language:

The first excluded category is falsification as to matters having no pecuniary significance, *e.g.*, where a salesman misrepresents his political, religious, or social affiliations. Such misrepresentations may succeed in securing the buyer's patronage and in that sense it could be said that whatever is paid for the purchase is money obtained by deception. But the injury done to the buyer is not a property deprivation of the sort that should be condemned and punished as theft, since the deceived person secures exactly what he bargained for in the way of property.[15]

■ Thus, this subsection does not support the contention that pecuniary loss must be an element of the crime of theft by

11. *See State v. Lakey,* Utah, 659 P.2d 1061, 1063 (1983) ("'Purpose to deprive' includes a conscious object to 'withhold property permanently' or to dispose of it 'under circumstances that make it unlikely that the owner will recover it.'").

12. 663 P.2d at 51.

13. 663 P.2d at 50.

14. A number of other states have also adopted identical language. *See, e.g.,* Ala.Code § 13A–8–1(1) (1975); Alaska Stat. § 11.46.180(c) (1962); Ark.Stat.Ann. § 41–2201(3) (1947); Ga.Code Ann. § 16–8–3 (1982); Hawaii Rev.Stat. § 708–800(4) (1976); Ky.Rev.Stat. § 514.040(2) (1985); Mo.Rev.Stat. § 570.010(7) (Supp.1984); Neb. Rev.Stat. § 28–512 (1943); N.H.Rev.Stat.Ann. § 637:4(III) (1974); N.J.Rev.Stat. § 2C:20–4 (1982); N.D.Cent.Code § 12.1–23–10(1) (1976); Ore.Rev.Stat. § 164.085(2) (1983); 18 Pa.Cons. Stat.Ann. § 3922(b) (1983); S.D.Codified Laws § 22–30A–3 (1979).

15. Model Penal Code, § 223.3 commentary at 194–95 (Official Draft and Revised Comments 1980). *See also, e.g., Linne v. State,* Alaska App., 674 P.2d 1345, 1351–52 (1983).

deception and was obviously not intended to do so by its drafters.

The Court in *Johnson* also relied on *State v. Morris,*[16] and other cases interpreting the predecessor statute to section 405.[17] In light of the specific elements set forth in section 405(1) by the legislature, those earlier cases and the elements set forth therein do not and cannot control.

There is no question that evidence of pecuniary loss could be used to prove the elements of the crime of theft by deception. However, pecuniary loss is not an essential element in itself. As the Arizona Supreme Court said in *State v. Mills:*[18]

> The gist of the offense ... is concerned with what the defrauder obtains. Once the victim has parted with his property in reliance on a false representation, it is immaterial whether whatever he got in return is equal in exchange value to that with which he parted. Judge Learned Hand put it as follows:
>
> > "A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value. It may be impossible to measure his loss by the gross scales available to a court, but he has suffered a wrong; he has lost his chance to bargain with the facts before him. That is the evil against which the statute is directed." [19]

Thus, to the extent that *State v. Johnson* and *State v. Walton*[20] intimated that pecuniary loss was a necessary element of the crime of theft by deception, they are overruled.[21]

Defendant's second point on appeal is that the trial court's failure to give defendant's proposed instructions on pecuniary loss constituted reversible error. The general rule is that an accurate instruction upon the basic elements of an offense is essential.[22] Failure to so instruct constitutes reversible error.[23] In light of our holding above that pecuniary loss does not constitute an essential element of the crime of theft by deception, the trial court's refusal to give the requested instructions was not error.

The judgment of the trial court is therefore affirmed.

STEWART and ZIMMERMAN, JJ., concur.

HOWE, Justice (concurring):

I concur in affirming the defendant's conviction. I cannot wholly subscribe, however, to the majority's statement that prior cases of this Court have required evidence of pecuniary loss and therefore must be overruled.

In *State v. Howd,* 55 Utah 527, 188 P. 628 (1920), this Court stated that in order to convict a defendant of the crime of obtaining money or property by false pretenses (Compiled Laws of Utah § 8344 (1917)), the following elements must concur: (1) there must be an intent to cheat or defraud; (2) an actual fraud must be committed; (3) there must be a fraudulent representation or a false pretense for the purpose of perpetrating the fraud in obtaining the property of another; and (4) the fraudulent representation or false pretense must

---

16. 85 Utah 210, 38 P.2d 1097 (1934).

17. U.C.A., 1953, § 77–31–17 (theft by false pretenses).

18. 96 Ariz. 377, 396 P.2d 5 (1964).

19. *Id.* at 381, 396 P.2d at 8 (quoting *United States v. Rowe,* 56 F.2d 747, 749 (2d Cir.1932) ).

20. Utah, 646 P.2d 689 (1982).

21. We note that the outcomes in both cases would not be changed by the Court's action today. In *Johnson,* the defendant's convictions were reversed because the alleged victim got what it bargained for. In *Walton,* the State proved all of the elements of the crime of theft by deception, *including* that the victims suffered a monetary loss. However, the defendant's conviction was reversed and the case remanded for a new trial on the ground that the jury was improperly instructed on the use of presumptions, contrary to *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

22. *State v. Laine,* Utah, 618 P.2d 33, 35 (1980).

23. *Id.*

be the cause which induced the owner to part with his property. These elements were reaffirmed later in *State v. Fisher*, 79 Utah 115, 8 P.2d 589 (1932). It is to be noted that no requirement was made that the victim sustain a pecuniary loss. In *State v. Casperson*, 71 Utah 68, 262 P. 294 (1927), this Court emphasized that a pretense false in fact and an actual fraud resulting in prejudice are the bases of the crime. We there said:

> The actual fraud and prejudice required, however, is determined according to the situation of the victim immediately after he parts with his property. If he gets what was pretended and what he bargained for, there is no fraud or prejudice. But if he then stands without the right or thing it was pretended he would then have, he has been defrauded and prejudiced by reason of the false pretense, and the offense is complete, *notwithstanding thereafter he may regain his property, or the person obtaining it or another compensates him, or he thereafter obtains full redress in some manner not contemplated when he parted with his property.*

(Emphasis added.) In the later case of *State v. Morris*, 85 Utah 210, 38 P.2d 1097 (1934), the above language was quoted with approval, after which this Court required that the claimed victim must also have sustained a pecuniary or property loss by reason of the transaction relied upon. In that case, because the claimed victim had security sufficient to cover any loss that might occur, the defendant's conviction was reversed and a new trial ordered. We there observed that in a civil action based on fraud a plaintiff would have to prove injury or damages. For even stronger reasons, we said, this requirement should obtain in a criminal action based on fraud. However, except in *State v. Morris, supra,* pecuniary loss has not been required to be shown in any case. Instead, the focus has been on whether the victim received what was pretended and what he bargained for. "A failure to receive what was bargained for being an essential element of the crime of obtaining money or property by false pretenses, such facts must be alleged, other-

wise the information fails to charge a public offense." *State v. Fisher, supra,* at 79 Utah 120, 8 P.2d 589.

Since 1973, when our present section 76–6–405 (theft by deception) was enacted, we have decided *State v. Johnson*, Utah, 663 P.2d 48 (1983), where we stated that an essential element of the offense of theft by deception was that the victim failed to get what he bargained for *or* that he sustained a pecuniary loss. In *State v. Walton*, Utah, 646 P.2d 689 (1982), while we found that the victims suffered a pecuniary loss, we cited *State v. Casperson* to the effect that to sustain a conviction it was sufficient that neither of the victims received that for which he bargained. We held that it was immaterial that the victims might, by bringing a civil action against the defendant's principal, recover their losses.

My review of the Utah cases brings me to the conclusion that *State v. Morris* was an aberration in requiring that the victim sustain a pecuniary loss. In the instant case, the victim did not receive what she bargained for (Brazilian gold). Instead, she has the deed to a lot subject to $22,200 in liens, for which she did not bargain. That is sufficient to sustain defendant's conviction.

DURHAM, J., concurs in the concurring opinion of HOWE, J.